**SOUTH WINDSOR CONVALESCENT HOME, INC., Plaintiff-Appellee,**

v.

**David MATHEWS, Secretary of Health, Education and Welfare, et al., Defendants-Appellants.**

**No. 938, Docket 75–6136.**

United States Court of Appeals, Second Circuit.

Argued April 19, 1976.

Decided July 27, 1976.

Judith S. Feigin, Atty., Washington, D. C. (Peter C. Dorsey, U. S. Atty., D. Conn., New Haven, Conn., Rex E. Lee, Asst. Atty. Gen., Robert E. Kopp, David M. Cohen, Attys., Dept. of Justice, Washington, D. C., of counsel), for defendants-appellants.

Arnold W. Aronson, Hartford, Conn., for plaintiff-appellee.

Before HAYS and MANSFIELD, Circuit Judges, and BRIEANT, District Judge.*

MANSFIELD, Circuit Judge:

The Secretary of the Department of Health, Education and Welfare (hereafter "HEW") appeals from a decision and summary judgment order of the United States District Court, District of Connecticut, T. Emmet Clarie, *Chief Judge*, entered on July 17, 1975, holding that HEW regulation 20 C.F.R. § 405.415(d)(3), as applied to the years preceding 1970, contravenes the Medicare Act, 42 U.S.C. §§ 1395, *et seq.* (hereafter "the Act"), and the Due Process Clause of the Fifth Amendment. Because we conclude that jurisdiction was not available in the district court to test the HEW regulation, but rested exclusively in the Court of Claims, we reverse.

Plaintiff-appellee is a voluntary "provider of services" under the Medicare program, 42 U.S.C. § 1395x(u). Under the Act the hospital or convalescent facility provides defined basic services to individuals aged 65 or over, §§ 1395c, 1395d, and receives payment from the Federal Hospital Insurance Trust Fund that is controlled by HEW and financed by special wage taxes, §§ 1395cc (a)(1)(A), 1395i. The payment ordinarily is routed through a fiscal intermediary such as defendant Travelers Insurance Company and is designed to reimburse the provider for the "reasonable cost" incurred by him in furnishing treatment.

The Medicare Act does not explicitly define the term "reasonable cost." Instead, the Secretary of HEW is charged with promulgating regulations establishing the methods to be utilized and the items to be included in calculating the costs "actually incurred" by the provider, § 1395x(v)(1)(A). Crucial to this suit, the Act specifically requires that the regulations "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement [to the provider] produced by the methods [established by the Secretary for] determining costs proves to be either inadequate or excessive," § 1395x(v) (1)(A)(ii).

The regulations defining "reasonable cost" always have included payment for capital assets used in providing Medicare services by permitting a depreciation allowance. Prior to August 1, 1970, providers were entitled to compute such depreciation charges by either the "straight-line" or the accelerated method. Plaintiff used the accelerated technique during his participation in the program from July 1, 1967, to October 1, 1971, when he terminated his involvement. At that point plaintiff fell within the ambit of the regulation challenged in this action, 20 C.F.R. § 405.415(d)(3).

The regulation, which became effective on August 1, 1970, provides in pertinent part:

"When a provider who has used an accelerated method of depreciation with respect to any of its assets terminates participation in the program, or where the health insurance proportion of its allowable costs decreases so that cumulatively substantially more depreciation was paid than would have been paid using the straight-line method of depreciation, the excess of reimbursable cost, determined by using accelerated depreciation methods and paid under the program over the reimbursable cost which would have been determined and paid under the program by using the straight-line method of depreciation, will be recovered . . . as an overpayment."

* Of the United States District Court for the Southern District of New York, sitting by designation.

Acting pursuant to this regulation, plaintiff's fiscal intermediary, upon termination of plaintiff's participation as a provider, requested that Windsor repay the difference between the total reimbursements it had received for the period 1967–71 utilizing accelerated depreciation and the payment it would have received had it used a straight-line calculation. Fearing a cut-off of other funds claimed under Subchapter XIX of the Act, 42 U.S.C. § 1396, known as the Medicaid program, plaintiff complied and repaid the sum of $16,367.45. It then instituted suit in the district court on August 16, 1974, seeking repayment of the money alleged to have been recaptured illegally by HEW. The complaint alleged that the amounts in issue were owed to plaintiff as allowances for accelerated depreciation permitted under regulations promulgated pursuant to the Medicare program, 20 C.F.R. Subpart D of Part 405, §§ 405.-401–.454, 31 Fed.Reg. 12808, prior to the addition of 20 C.F.R. § 405.415(d)(3), the recapture of accelerated depreciation allowances for periods prior to its effective date, was void for lack of statutory authoriwances for periods prior to its effective date, was void for lack of statutory authority and as violative of the Due Process Clause of the Fifth Amendment.

Without discussing jurisdiction, the district court ruled that regulation 405.-415(d)(3) cannot be legally enforced for the years preceding January 1, 1970, the beginning of the year of its promulgation. The court thereupon entered judgment for plaintiff in the amount of $15,655. Defendants appeal.

## DISCUSSION

At the threshold, we must consider the Secretary's challenge to the district court's jurisdiction since, without a grant of subject matter jurisdiction, the court was without power to consider the merits.

█ Although the complaint does not specify *in haec verba* the ground upon which federal jurisdiction is asserted, it is readily apparent from the nature of the claim asserted (recovery of monies due under a federal statute and withheld in violation of plaintiff's constitutional rights) and the complaint's allegation of jurisdictional amount ($10,000) that jurisdiction is invoked pursuant to the general federal question grant of 28 U.S.C. § 1331.[1] This jurisdictional avenue, however, is foreclosed by 42 U.S.C. § 1395ii, which incorporates by reference 42 U.S.C. § 405(h) of the Social Security Act. The latter section provides:

"The findings and decisions of the Secretary [of HEW] after a hearing shall be binding upon all individuals who were parties to such hearing. No finding of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 [now § 1331] of Title 28 to recover on any claim arising under this subchapter.*" (Emphasis added).

Ordinarily when a party challenges HEW action under the Social Security Act, § 405(h) simply serves to route jurisdiction through 42 U.S.C. § 405(g), which authorizes a civil action to be commenced in the district court within 60 days of the mailing of HEW's notice of decision. However, while the Medicare Act expressly incorporates § 405(h), it does not incorporate § 405(g) as a basis for judicial review with respect to disputes over provider reimbursement. See 42 U.S.C. § 1395ff(c). Consequently, appellant argues, Congress explicitly deprived federal courts of jurisdiction by the last sentence of § 405(h).

---

1. Although plaintiff's brief argues that jurisdiction may also be based on Title 28 U.S.C. § 1355 (actions for recovery of a fine, penalty or forfeiture incurred under the Act of Congress), this ground is not pressed seriously, which is understandable, since the statute was designed to provide jurisdiction with respect to claims involving clear-cut fines and penalties, cf. *Griekspoor v. United States*, 511 F.2d 137 (5th Cir. 1975), rather than ordinary contractual claims for the recovery of monies that traditionally have rested in the Court of Claims, cf. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

In the past we have not accepted the argument that § 405(h) serves to close the federal forum to judicial challenges grounded on the Medicare Act. Instead, we have repeatedly construed the statute to provide that "[w]here the Medicare Act establishes procedures for review of the Secretary's decision, a court may not review that decision by any other means. However, where the Act does not provide such procedures, section 405(h) does not preclude review" under 28 U.S.C. § 1331. *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 666–67 (2d Cir. 1973); *Aquavella v. Richardson,* 437 F.2d 397, 402 (2d Cir. 1971); *Cappadora v. Celebreeze,* 356 F.2d 1, 4–5 (2d Cir. 1966) (Social Security insurance claim). These cases, however, preceded the Supreme Court's recent decision in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the reasoning of which, though not the outcome,[2] is not easily reconcilable with our earlier interpretation of § 405(h). In *Salfi* the plaintiffs, invoking jurisdiction under 28 U.S.C. § 1331, sued for insurance benefits allegedly due them under the Social Security Act, 42 U.S.C. §§ 402(d) and (g)(1), but withheld on the basis of certain requirements of that Act claimed by the plaintiffs to violate the Fifth Amendment. Despite the plaintiffs' assertion of the constitutional claim, which would ordinarily provide a basis for general federal jurisdiction under § 1331, the Supreme Court construed the third sentence of § 405(h), quoted *supra,* at page 912, as barring such jurisdiction.

The applicability of the *Salfi* holding to the present case is readily apparent and cannot be escaped in view of the parallelism between the two cases. Here, as in *Salfi,* the plaintiff seeks to recover payments allegedly due under the Act, claiming that a regulation retroactively disallowing these payments violates the Fifth Amendment. Yet, despite the constitutional underpinning of plaintiffs' claims, *Salfi* made clear that § 405(h) bars § 1331 as a basis for federal judicial review.

In its context the *Salfi* holding produced a result of no great moment since, despite the absence of jurisdiction under § 1331, § 405(g) was found to authorize judicial review. See note 2 *supra.* However, when *Salfi's* conclusion is applied to a case where no alternative jurisdictional basis exists, its restrictive interpretation of § 1331 might[3] lead to a constitutional question of the first order, one that has arisen but rarely and tangentially in our constitutional history, i. e., whether the Congress can close the federal courts entirely to constitutional challenges directed against federal statutes or action.[4] We doubt that the

2. The outcome of *Salfi's* jurisdictional discussion is easily squared with our prior cases since the Court found § 405(g) to be applicable and accordingly jurisdiction was available thereunder at least with respect to the named appellees. See 422 U.S. at 763, 95 S.Ct. 2457.

3. A majority of circuits can escape any preclusion problem raised by *Salfi's* limitation on the use of § 1331 since most have found jurisdiction to be available under the Administrative Procedure Act. See, e. g., *Sanders v. Weinberger,* 522 F.2d 1167 (7th Cir. 1975); *Pickus v. United States Board of Parole,* 165 U.S.App. D.C. 284, 507 F.2d 1107 (1974); *Bradley v. Weinberger,* 483 F.2d 410 (1st Cir. 1973); *Brennan v. Udall,* 379 F.2d 803 (10th Cir.), *cert. denied,* 389 U.S. 975, 88 S.Ct. 477, 19 L.Ed.2d 468 (1967); *Deering Milliken Inc. v. Johnston,* 295 F.2d 856 (4th Cir. 1961); Davis, Administrative Law Treatise § 23.02 (1970 Supp.). Other circuits disagree. See, e. g., *Bramblett v. Desobry,* 490 F.2d 405 (6th Cir.), *cert. denied,* 419 U.S. 872, 95 S.Ct. 133, 42 L.Ed.2d 111 (1974); *Zimmerman v. United States,* 422 F.2d

326 (3d Cir.), *cert. denied,* 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir. 1967). In an earlier opinion we assumed that the APA is a legitimate source of jurisdiction, *Cappadora v. Celebreeze,* 356 F.2d 1 (2d Cir. 1966). However, we have since avoided elaborating on this question, see *Kingsbrook Jewish Medical Center v. Richardson, supra,* 486 F.2d at 667 n. 9; *Aquavella v. Richardson, supra,* 437 F.2d at 400 n. 10; *Toilet Goods Association v. Gardner,* 360 F.2d 677, 679 n. 1 (2d Cir. 1966), *aff'd,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). This case warrants no further consideration of the issue since we find jurisdiction to rest exclusively in the Court of Claims.

4. See, e. g., *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850); *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869); *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872); *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 84, 56 S.Ct.

Supreme Court intended its reading of § 405(h) in *Salfi* to have the effect of precluding federal jurisdiction over constitutional questions,[5] since the result would be at odds with the well established principle that a court will not construe a statute to restrict access to judicial review unless Congress manifests its intent to do so by "clear and convincing evidence." See *Salfi, supra,* 422 U.S. at 765, 95 S.Ct. 2457; *Johnson v. Robison,* 415 U.S. 361, 373–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Rusk v. Cort,* 369 U.S. 367, 379–80, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962). Perhaps for this reason, at least two other circuits have narrowly construed *Salfi's* language in considering the reach of § 405(h). See *Lejeune v. Mathews,* 526 F.2d 950, 953 (5th Cir. 1976); *Sanders v. Weinberger,* 522 F.2d 1167, 1171 (7th Cir. 1975). We need not face that issue in this case, however, since an alternative basis of jurisdiction apart from § 405(g) is available and consequently a preclusion-of-review problem does not arise.

■ Under 28 U.S.C. §§ 1346 and 1491, when a claim against the United States exceeds the sum of $10,000,

"[t]he Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Con-

gress, or any regulation of an executive department . . . ." 28 U.S.C. § 1491.

Since the claim involved in this case is directed against the United States, seeks solely a money judgment, and exceeds the threshold sum of $10,000, jurisdiction lies exclusively with the Court of Claims. See *Putnam Mills Corp. v. United States,* 432 F.2d 553 (2d Cir. 1970). The fact that plaintiff's claim is grounded on a constitutional challenge is of no consequence since, as the language of § 1491 makes clear, the Court of Claims, as an Article III court, is fully empowered to decide the constitutional issue. And § 405(h) does not serve to bar review in the Court of Claims since, although the suit here is under the Medicare Act, 28 U.S.C. § 1491 is not included in "section 41 of Title 28."

Accordingly, we reverse the decision of the district court without prejudice to plaintiff's proceeding with its suit in the Court of Claims.

BRIEANT, District Judge (dissenting):

Oliver Twist, speaking in behalf of himself and all others similarly situated, asked his almoners at the workhouse for more gruel. He was reprimanded by the Beadle and severely punished.[1] The social security system in this country, stripped of its rhetoric, is federal almsgiving, so recognized by the Supreme Court.[2] To prevent the latter

720, 80 L.Ed. 1033 (1936) (Brandeis, *J.,* concurring). See generally Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L. Rev. 1362 (1953).

5. In particular, *Salfi* distinguished the earlier case of *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), where a congressional enactment similar to § 405(h) was found not to bar judicial review, expressly on the ground that the *Johnson* holding was necessary to avert a possible closing of the judicial forum. Justice Rehnquist wrote that *Johnson* "was expressly based, at least in part, on the fact that if [the statute in question] reached constitutional challenges to statutory limitations, then absolutely no judicial consideration of the issue would be available. Not only would such a restriction have been extraordinary, such that 'clear and convincing' evidence would be required before we would ascribe such intent to Congress, 415 U.S., at 373

[94 S.Ct. [1160] at 1169], but it would have raised a serious constitutional question of the validity of the statute as so construed. *Id.,* at 366–67 [94 S.Ct. [1160] at 1165–1166]. In the present case, as will be discussed below, the Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. Thus the plain words of the third sentence of § 405(h) do not preclude constitutional challenges." 422 U.S. at 762, 95 S.Ct. at 2465.

1. This fictional character first appeared in 1837 in a magazine serial "Oliver Twist; or the Parish Boy's Progress" by "Boz" (Charles Dickens). A beadle, in English ecclesiastical law, is a parish officer chosen by the vestry to execute its orders, attend upon inquests and to assist the constables. Collecting and disbursing the poor rate was then an ecclesiastical function.

2. See *Helvering v. Davis,* 301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307 (1937); *Flemming v.*

day Twists from annoying the beadles at HEW with proliferating litigation in district courts in which they ask for more, Congress enacted 42 U.S.C. § 405(h), incorporated by reference in 42 U.S.C. § 1395ii.

This statute, even as enlarged by the gloss of *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), merely limits access to the district courts by "beneficiaries" of the system, the Twists.

The majority in this case holds that "[A]s in *Salfi*, the plaintiff seeks to recover payments allegedly due under the Act." Plainly, this is factually incorrect. South Windsor, appellee here, is no beneficiary of the Act. Its inmate patients are the beneficiaries, and to them perhaps the courthouse door is partially closed by the rule of *Salfi*, relied on by the majority. But South Windsor is a party having contract rights with an intermediate party (Travelers Insurance Company) acting in turn for HEW.

It is a *provider* under Title XVIII, not a beneficiary. There is no factual dispute about that, nor is it disputed that the Secretary, through his minions applied economic duress or coercion to South Windsor to induce it to repay $15,655. "under protest." But for this duress, the Secretary would have been a party plaintiff in the district court. Instead, he announced that further intransigence and refusal to repay the disputed sum would lead him to stop substantial and entirely unrelated payments concededly owed appellee for unrelated services under Title XIX of the Act. See Com-

plaint, ¶ 21, and the district court opinion, 403 F.Supp. 515, 517.[3]

Here, appellee pleaded with sufficiency that the Secretary tortiously extracted money from it under protest, claimed to be due under a regulation unconstitutional and invalid as applied to it, and in doing so deprived it of money and contract rights without due process. Subject matter jurisdiction exists under 28 U.S.C. § 1331(a) to recover such money given over under protest, and taken in violation of the Fifth Amendment of the Constitution and Art. I, § 10, Cl. 1 thereof, by a federal official. *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Actions against a federal officer as an individual to recover money and property delivered over under protest to such officer acting under statutory powers, which are unconstitutional as applied in the particular case, have always been permitted in the district court. *Malone v. Bowdoin*, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *Dugan v. Rank*, 372 U.S. 609, 621–22, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Cf., *Knight v. State of New York*, 443 F.2d 415, 419 (2d Cir. 1971).

I would affirm on the opinion of Judge Clarie below, modifying to strike out the United States as a party defendant.

That the Court of Claims might have jurisdiction is cold comfort to this litigant, and a subject upon which I express no opinion.

---

*Nestor*, 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960), cited with approval in *Salfi, supra*. In *Flemming*, Justice Harlan wrote: "To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever changing conditions which it demands." In *Salfi*, 422 U.S. at p. 772, 95 S.Ct. at p. 2470 the Court described the benefits thereunder as

"[A] noncontractual claim to receive funds from the public treasury [which] enjoys no constitutionally protected status, *Dandridge v. Williams*, [397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491], though of course Congress may not invidiously discriminate among such claimants on the basis of a 'bare congression-

al desire to harm a politically unpopular group,' *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534 [93 S.Ct. 2821, 2826, 37 L.Ed.2d 782] (1973), or on the basis of criteria which bear no rational relation to a legitimate legislative goal."

**3.** The District Court found that "[u]nder threat of the Government's complete cutoff of federal financial participation in the [unrelated] Title XIX, program, the plaintiff paid back, under protest" the amount determined by the Secretary to be the appropriate adjustment. [Matter in brackets supplied]. The cash flow and credit problems of those furnishing health services are usually so severe that cessation of the flow of cash results in an immediate cessation of services.