## UNIHEALTH SERVICES CORPORATION

v.

**Joseph P. CÀLIFANO, in his official capacity as Secretary of Health, Education & Welfare of the United States, et al.**

Civ. A. No. 77–3001.

United States District Court,
E. D. Louisiana.

March 21, 1978.

Donna D. Fraiche, Baton Rouge, La., for plaintiff.

Suzanne Cochran, Asst. Regional Atty., Dept. of Health, Education & Welfare, Dallas, Tex., for defendant.

## MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

This matter is before the Court on the motion to dismiss of Joseph P. Califano, in his official capacity as Secretary of Health, Education & Welfare of the United States, et al (referred to as "the United States") brought pursuant to Federal Rules of Civil Procedure 12(b)(1) as a challenge to this Court having jurisdiction over the claims presented. The defendant's jurisdictional argument is grounded on two basic contentions:

(1) that the plaintiff lacks standing in this action so as to make it a case or controversy subject to a federal court's Article III jurisdiction under the United States Constitution; and

(2) that this Court does not have subject matter jurisdiction of the case in that § 205(h) of the Social Security Act, incorporated into the Medicare provisions of the Act as 42 U.S.C. § 1395 et seq., prevents this Court from exercising any judicial review over the particular claims presented by the plaintiff.

As best the Court can determine on the basis of the factual scenario presented in the record, Unihealth and the United States, through its appropriate agency which administers the Medicare program, agree on the following fact rendition. Plaintiff, Unihealth Services Corporation, established in 1969, is a private professional management and consulting firm specializing in the rendering of service to nonprofit home health agencies as those entitled are so defined in 42 U.S.C. § 1395x(m). These agency clients are "providers" under Title 18 of the Medicare Act (referred to also as "Act"), 42 U.S.C. § 1395 et seq. Plaintiff has contracted to provide services to certain providers but is not a Medicare provider itself.

Unihealth services 25 provider clients in a 17-state area and the District of Columbia pursuant to a contract with each client agency wherein a unified charge is billed for the services rendered based on the percentage of gross billings of the respective agencies as set out in the agreement. The cost, although not billed by means of a breakdown, purportedly included initial startup fees; professional consultation and orientation program; continued management services; manuals; forms; brochures; other teaching tools; as well as guidance and aid in all financial matters; data processing; billing services and preparation of cost and periodic interim payment reports; and assistance in audit procedures conducted by fiscal intermediaries. In each contract with a provider, plaintiff has agreed that it will refund to the provider any charges for its services that are disallowed by Medicare. Plaintiff's clients receive monthly payments from Medicare which the client and the United States estimate will amount to the provider's proper reimbursement when costs are audited at the end of the fiscal year. Such interim payments include payments for the cost of the types of services provided by plaintiff.

From 1969 through 1976 Medicare officials recognized Unihealth as a management company under policy considerations set out under the provider reimbursement manual. Medicare in making its determination as to the reasonableness of cost regarding Unihealth's services to the providers scrutinized those costs under guidelines found appropriate to management companies. From 1970 until November, 1976, the fees Unihealth charged its clients were found to be within the principles of reimbursement and thus allowed.

As alleged by plaintiff, in 1968 officials of Medicare began to review the status of the plaintiff in an effort to make a policy determination as to whether Unihealth should be regarded as a management company or as a franchisor under the provider reimbursement manual. Plaintiff claims that such a review was made without the knowledge of Unihealth. Purportedly without receiving legal notice of any meetings, officials of Medicare met and reached a policy decision that Unihealth should be treated as a franchisor when Medicare makes a determination on reimbursement. Under § 2133 of the Provider Reimburse-

ment Manual, franchise fees are allowable only to the extent that they are not out of line with costs of similar services provided by nonfranchise organizations. This section requires that providers establish the cost of each of the specific services provided by the franchisor. It requires exclusion of any additional fees relating to the franchisor's trademark or reputation which are purportedly not related to patient care.

As a result of this policy determination recognizing Unihealth as a franchisor, the plaintiff contends that those standards applicable to franchisors in determining reasonable costs, were applied retroactively to those years when plaintiff was operating as a management corporation as designated by Medicare. Retroactive application of standards relating to franchisors purportedly altered the condition under which plaintiff was operating in the following manner:

(1) That Medicare officials retroactively conducted a more rigorous scrutiny of Unihealth's cost report than was required when Unihealth was accorded management status;

(2) That Unihealth was required to provide itemized cost statements of each individual service rendered to a provider whereas in the past under standards applicable to management corporations, it did not have to itemize costs as to individual services;

(3) That under the franchisor standards, and as referred to above, Unihealth was forced to retroactively utilize more onerous accounting procedures in setting out the costs of the services rendered;

(4) That the presumption that all costs and services stated by a management corporation are reasonable was substituted for the franchisor presumption that all costs and services rendered are not reasonable and must be proven by detailed documentation.

Plaintiff contends that as a result of this retroactively applied policy determination recognizing it as a franchisor, Unihealth's provider clients have withheld almost all payments outstanding to Unihealth in the full amount of $800,000.

In an effort to challenge the legality of the policy determination, the method of promulgating that determination, and the manner in which the policy decision and its attendant requirements were applied, Unihealth filed the lawsuit temporarily allotted to Section "I" after its transfer from Section "C." The following is a summary of the numerous claims for relief set out in plaintiff's complaint.

(1) That defendant has infringed its due process rights as set out in the Fifth Amendment of the United States Constitution: (a) by singling out the plaintiff in an attempt to regulate it under the Medicare Act without allowing plaintiff any administrative review or judicial review as provided by the Medicare Act; (b) by failing to give plaintiff guidelines further defining "reasonable cost" pursuant to Title 20, Code of Federal Regulations, § 405.501, et seq.; (c) by failing to give the plaintiff proper or legal notice that its charges for services would be disallowed based on retroactively applied policy decisions affecting cost reports for the years 1976, 1975 and 1974; (d) by retroactively applying the policies, practices, actions, and determinations of defendant so as to force plaintiff out of its professional practice thereby proscribing its ability to engage in its profession; (e) by denying plaintiff the right to a hearing relative to the issue of its status as a franchisor, though defendant's precedential policy determination had the adverse effect of depriving Unihealth of its presumption of having submitted reasonable costs on a unified basis;

(2) That defendant has failed to grant equal protection under the law to plaintiff as required by the Fifth Amendment of the United States Constitution when it singled out plaintiff on the basis of its unique status in the Medicare field to demonstrate that disallowances of certain

charges submitted to Medicare could be made on a retroactive basis.

The parties are in substantial disagreement as to what is the nature of the relief sought. The United States suggests that the only relief that plaintiff is truly seeking is to have judicial review of an administrative determination under the Medicare Act that the costs of services charged to providers by Unihealth were unreasonable. On the basis of this characterization of the relief Unihealth allegedly is seeking, the United States suggests that this Court should adopt the reasoning set forth in *New Jersey Chapter, Incorporated, of the American Physical Therapy Association, Inc. v. The Prudential Life Insurance Company of America,* 164 U.S.App.D.C. 40, 502 F.2d 500 (1974), wherein that Court discussed both the standing and judicial review issues. In that case, the Association of Physical Therapists as a contractor of services to providers brought an action against its fiscal intermediary (private company chosen by United States to make initial determination of reasonableness of costs that providers have sustained) under the Medicare program challenging guidelines adopted by the intermediary for reimbursement to providers for cost of physical therapists' services. Medicare officials made a policy determination clarifying what intermediaries should determine to be reasonable costs for physical therapy services. In adopting these new policy considerations the officials stated that it would be necessary that accurate records of the therapists' activities be maintained and made available to the intermediary. Then, the officials prospectively applied these new record-keeping requirements to providers in the program.

In entertaining the nonconstitutional challenge to the guidelines adopted by the intermediaries, the Court applied the following analysis to the issues:

On this appeal the government argues (1) plaintiff's complaint does not state a meritorious claim for relief; (2) the District Court correctly held that plaintiff did not have standing to sue; and (3) determination of the amounts payable to providers of services is not subject to judicial review. We turn first to the government's second and third arguments.

The government says correctly that the Act was expressly designed for the protection of elderly citizens who require medical care, and those persons of course have standing to vindicate their rights under the Act. Furthermore, since the Act assures a provider of reimbursement for the reasonable costs incurred by him, a provider would seem to have an interest within the zone protected by the statute. Plaintiff's members on the other hand are not subject to regulation under the Act and their rights are derived from their contractual arrangements with providers. There is nothing in the Medicare Act or its legislative history, says the government, which indicates any concern by Congress to protect the interests of persons such as plaintiff's members who are only indirectly affected by the operation of the Medicare program. From all this the government concludes that the plaintiff and its members have no standing to sue.

In support of its argument that the plaintiff's claims are not subject to judicial review, the government directs our attention to the provisions of the Medicare Act, 42 U.S.C. § 1395ff, which provide for judicial review of (1) a determination of whether an individual is entitled to benefits, and (2) a determination that an institution is not a provider of services or that its agreement to provide services should be terminated. The government finds it significant that no provision is made for judicial review of the award of compensation to providers of services; and the government reasons that since decisions on this matter are not subject to judicial review it follows *a fortiori* that decisions on the amounts due to contractors, who are indirectly affected by the Medicare program, are also not subject to judicial review.

There is much force in the government's arguments. As this court has said however recent decisions of the Supreme

Court "have made the standing obstacle to judicial review a shadow of its former self, and have for all practical purposes deprived it of meaningful vitality." *National Automatic Laundry & Cleaning Council v. Shultz,* 143 U.S.App.D.C. 274, 278, 443 F.2d 689, 693 (1971). Standing need not be founded on a rock; a pebble or even a cobweb may do. Moreover, only a showing of clear and convincing evidence of legislative intent will justify a court in precluding access to judicial review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Here, we think plaintiff's standing and the reviewability of plaintiff's claims at least present close and difficult questions; but we shall not pause to wrestle with these problems, since we conclude that in any event the defendants must prevail on the merits. (164 U.S.App.D.C. at 44, 502 F.2d at 504)

Unihealth denies that it has brought this action in an attempt to obtain judicial review of an administrative determination that Unihealth's charges to a provider were unreasonable. Rather, Unihealth suggests that it is raising constitutional challenges stemming from the Government's stringent regulation of the plaintiff's contractual relationship with the providers. In particular, Unihealth avers that its due process rights have been violated in that Medicare officials denied it access to the administrative and judicial review established in the Medicare Act while at the same time stringently regulating the plaintiff through enactment of policy determinations made pursuant to the Medicare Act. In a second constitutionally based allegation, Unihealth contends that its due process rights have been denied in that the policy determinations effecting strict regulation of the plaintiff are unconstitutional on their face, in their manner of application, and in their method of promulgation.

Unihealth urges that it has a right to bring these constitutional challenges stemming from indirect regulation by the Medicare Act, citing *Cotovsky-Kaplan Physical Therapists Association, Ltd. v. United States,* 507 F.2d 1363 (7th Cir. 1975). In *Cotovsky, supra,* the issue before the Court was whether a supplier of services, whose own interests were not directly regulated by statute or administrative action under the Medicare Act, had standing to challenge a regulation which required its regulated customers to take their patronage elsewhere. The regulation in question provided that providers could contract out the provision of physical therapy services only to nonprofit therapy agencies and not to proprietary corporations such as the plaintiffs. Plaintiffs brought suit alleging that such a regulation deprived them of property without due process of law. The District Court concluded that plaintiffs lacked standing to challenge the constitutionality of the regulation.

The Appellate Court, in reversing the decision of the District Court, concluded that the interests sought to be protected by the physical therapists were arguably within the zone of interest to be protected or regulated by the Medicare statute or by the constitutional guarantee of the Fifth Amendment. The Court reasoned as follows:

Defendants respond and the district court concluded, however, that the regulation purports to regulate only home health agencies and that it does not regulate plaintiffs or their contracts. To focus on whether the plaintiffs are directly regulated themselves is to read the Data Processing test too narrowly. The test is not whether these plaintiffs are regulated by the statute but whether the interests asserted by them arguably fall within the zone of interests so regulated.

Nearly three decades before its Data Processing decision, the Supreme Court held that indirect regulation, like that involved in this case, was adequate to confer standing to challenge administrative action. In *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, the Court held that CBS had standing to challenge F.C.C. regulations conditioning

the grant of broadcast licenses to local stations on the nature of their contracts with radio networks. Neither CBS nor its contractual relationship with any local station was directly regulated. Nevertheless, in response to a standing argument similar to that made here, the Court held:

Appellant's standing to maintain the present suit in equity is unaffected by the fact that the regulations are not directed to appellant and do not in terms compel action by it or impose penalties upon it because of its action or failure to act. It is enough that, by setting the controlling standards for the Commission's action, *the regulations purport to operate to alter and affect adversely appellant's contractual rights and business relations with station owners* whose applications for licenses the regulations will cause to be rejected and whose licenses the regulations may cause to be revoked. 316 U.S. at 422, 62 S.Ct. at 1202–1203 (emphasis added.)

Even more directly in point is the holding in *Air Reduction Co., Inc. v. Hickel,* 137 U.S.App.D.C. 24, 420 F.2d 592 (1969). In that case private producers and distributors of helium challenged regulations of the Secretary of the Interior providing that government contractors must purchase all of their helium requirements for those contracts from the government. The regulations, of course, did not directly regulate the plaintiffs or their contracts with government contractors. Nevertheless, the court of appeals held that they had standing.

We therefore conclude that if, pursuant to what it perceives to be its statutory authority, a government agency regulates the contractual relationships between a regulated party and an unregulated party, the latter as well as the former may have interests that are arguably within the regulated zone for purposes of testing standing, and for this purpose a total prohibition is a form of regulation.

As the interests of these plaintiffs arguably fall within the zone regulated by the Medicare statutes, we hold that they have standing to obtain judicial review of 20 C.F.R. § 405.1221(a). (507 F.2d at 1366–1367)

The Court also recognized that it was not necessary to decide whether plaintiffs had standing on constitutional grounds because their interests arguably fell within the zone of interest protected by the Fifth Amendment. The Court so opined:

. . . "when the plaintiff is challenging governmental action on constitutional grounds, he necessarily is asserting that his interest is protected by the constitutional guarantee upon which he is relying." . . . (507 P.2d at 1368, n. 12)

■ The Court agrees with Unihealth that it has raised more than a request for a review of its charges to providers. Just as plaintiff has characterized its claims, Unihealth is demanding both that it be allowed access to the review procedures provided by the Medicare Act and that it be regulated within due process parameters since the alleged regulations have purportedly interfered with both contractual and occupational relationships of plaintiff.

In *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) the Court held that a party possesses standing to seek nonstatutory judicial review of administrative action if it "alleges that the challenged action has caused it injury in fact, economic or otherwise," and if "the interest sought to be protected by the complainant is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question."

First, it is evident that the alleged challenged actions, i. e., no access to administrative and judicial review under the Medicare Act and the unconstitutionality of the regulations imposed on plaintiff, have caused the plaintiff economic harm and otherwise in affecting its relationships with the providers such that providers are withholding certain sums purportedly owed Unihealth.

Second, as stated in *Cotovsky, supra,* the Court is to assume that plaintiff arguably falls within the zone of interest protected by its Fifth Amendment rights when it challenges governmental action on Fifth Amendment grounds.

Whether or not Unihealth arguably falls within the zone of interest regulated by the Medicare Act turns on a determination of the nature and extent of alleged regulating activities. *Cotovsky, supra.* Since a factual issue remains regarding the nature and extent that Unihealth has been regulated, the Court must resolve this issue on the merits before it can render a decision on standing under the Medicare Act. Courts have recognized that they may postpone a decision on a jurisdictional issue if that issue is intertwined with a decision on the merits of the case. *Continental Casualty Company v. Department of Highways, State of Louisiana,* 379 F.2d 673 (5th Cir. 1967). Therefore, while the Court has already concluded that this plaintiff has standing under the Fifth Amendment to bring the claims, it will await a decision on the merits before deciding whether Unihealth also has standing under the Medicare Act.

Having concluded that standing does exist, at least under the constitutional grounds for plaintiff to bring this action, the Court turns its inquiry to the issue of whether it has subject matter jurisdiction to review such claims.

Basically, plaintiff is asserting that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. The defendant's challenge to this jurisdictional approach is grounded on statutory language in the Medicare Act. In 42 U.S.C. § 405(g), Congress has set forth the administrative and judicial review provisions for entertaining official administrative determinations. The statute provides:

(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewa-

ble only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

The pertinent section of the Medicare Act pertaining to the restriction of judicial review under federal-question jurisdiction is found in 42 U.S.C. § 405(h) which provides as follows:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under § 24 of the Judicial Code of the United States (28 U.S.C. § 1331) to recover on any claim arising under this title.

Until the United States Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the lower courts had read § 405(h) as merely codifying the principle of exhaustion of administrative remedies. The Supreme Court considered this reading of the section to be entirely too narrow. In *Salfi, supra,* a class action was filed by a widow and a stepchild seeking social security benefits after the death of the widow's wage-earning spouse. The Administration denied payment of any benefits on the basis of a regulation that requires the wife or child to have had such a relationship with the deceased wage-earner for at least nine months prior to the wage-earner's death before benefits can be paid. Without seeking administrative review of the decision, the wife filed suit in federal district court attacking the constitutionality of the above regulation.

The Supreme Court concluded that § 405(h) of the Medicare Act prevented the plaintiff in that case from seeking judicial review of the administrative determination pursuant to 28 U.S.C. § 1331. The Court concluded that she had an alternate judicial remedy as provided in § 405(g) to appeal the Secretary's finding to the federal district court. There were several crucial determinations made by the Court in reaching its decision that the plaintiff could not pursue her claim under federal question jurisdiction. First, the Court recognized that plaintiff as an alleged beneficiary under the Social Security Act did indeed come within the scope of the Act. Second, the Court concluded that the plaintiff's claim for social security benefits, consistent with the design of § 405(h) arose under the Social Security Act. Though the plaintiff had characterized her claim as a constitutional attack on a regulation promulgated under the Act, the Court concluded that she was suing under the Act since she sought benefits provided by the Act, had standing under the Act, and a substantive basis for the presentation of her constitutional claims arose from the Act. Though the Court foreclosed federal question jurisdiction as a means of obtaining judicial review of her constitutional challenge, the Court was mindful of the grave constitutional problems created when legislation is so interpreted as to totally preclude judicial consideration of constitutional issues. The impact of such preclusion was not addressed since the Court recognized that § 405(g) provided an alternative for judicial review of constitutional challenges to regulations promulgated under the Act. The Court so stated:

> The Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. Thus the plain words of the third sentence of § 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grounds contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act. The result is not only of unquestionable constitutionality, but is also

manifestly reasonable, since it assures the Secretary the opportunity prior to the constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act. (95 S.Ct. at 2465)

In the aftermath of the *Salfi* decision, while attempting to apply the preclusion rule of § 405(h), the lower courts have struggled to clarify certain puzzling questions raised by *Salfi, supra.* Those frequently asked questions are: (1) when should a claim be deemed as being brought pursuant to the Medicare Act; (2) does § 405(h) preclude judicial review under federal question jurisdiction of nonconstitutional claims where no alternative judicial review is provided by the Medicare Act; and (3) does § 405(h) preclude judicial review of constitutional challenges to the Act where no review procedure for such challenges is provided in the Act?

In *Hazelwood Chronic and Convalescent Hospital, Inc. v. Weinberger,* 543 F.2d 703 (9th Cir. 1976) the Court concluded that the directive in *Salfi, supra,* prevented resort to federal-question jurisdiction on a constitutional challenge to denial of benefits under the Social Security Act. However, aware that a constitutional challenge requires a forum where it may be redressed, the Court held that the Administrative Procedure Act provided an implicit but independent basis for jurisdiction. 5 U.S.C. § 702, et seq.

Shortly after the *Hazelwood* decision, the Supreme Court in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1976) concluded that the Administrative Procedure Act did not afford an independent grant of such jurisdiction to a party seeking to have judicial review of an administrative decision disallowing social security claims. The Court did emphasize that the caveat raised in *Salfi, supra,* and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) regarding the need to provide judicial review for constitutional challenges was still of vital significance. The Court concluded that the respondent Sanders did have a forum for judicial review as provided under § 405(g) of the Social Security Act.

In *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910 (2d Cir. 1976), the Second Circuit in a post-*Salfi* decision concluded that § 405(h) prevented the plaintiff from seeking jurisdictional review under 28 U.S.C. § 1331 of his claim that a regulation under Medicare retroactively disallowed certain payments owed him as a provider, thereby violating his Fifth Amendment rights. The Court did find that an alternative jurisdictional basis existed under 28 U.S.C. § 1491 when a claim against the United States exceeds the sum of $10,000. As stated in 28 U.S.C. § 1491:

> The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any act of Congress, or any regulation of an executive department . . . .

As done by other courts considering these Medicare issues, the *South Windsor* court considered what the repercussions would be should Congress through its legislation close the federal courts entirely to constitutional challenges directed against federal statutes or actions. The Court opined:

> However, when *Salfi's* conclusion is appl[y] to a case where no alternative jurisdictional basis exists, its restrictive interpretation of § 1331 might lead to a constitutional question of the first order, one that has arisen but rarely and tangentially in our constitutional history, i. e., whether the Congress can close the federal courts entirely to constitutional challenges directed against federal statutes or actions. We doubt that the Supreme Court intended its reading of § 405(h) in *Salfi* to have the effect of precluding federal jurisdiction over constitutional questions, since the result would be at odds with the well-established principle that a court will not construe a statute to restrict access to judicial review unless Congress manifests its intent to do so by "clear and convincing evidence."

The Fifth Circuit in *Dr. John T. MacDonald Foundation, Inc. v. Mathews*, 554 F.2d 714 (5th Cir. 1977) disagreed with the Second Circuit's conclusion that § 405(h) did not preclude jurisdiction under 28 U.S.C. § 1491. The Fifth Circuit stated:

. . . In *South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910 (2d Cir. 1976), the Second Circuit concluded that *Salfi* precluded federal-question jurisdiction in Medicare cases like this one but found jurisdiction to review existed in the Court of Claims. This it did on reasoning that although the last sentence of § 405(h) forbade review under "section 41 of Title 28," it did not speak to 28 U.S.C. § 1491, the Court of Claims provision. This analysis fails, however, to deal with what seems to us the equally preclusive language of the second sentence of § 405(h): "No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal or governmental agency except as herein provided." (554 F.2d at 716–717)

In proscribing the alternate jurisdictional bases to § 405(g) under 28 U.S.C. § 1331, 28 U.S.C. § 1491, and 5 U.S.C. § 702, the courts have quickly approached that situation that they found necessary to avoid in their interpretation of § 405(h), that being the conclusion that Congress by enactment of this section had closed the federal courts entirely to constitutional challenges directed against the Medicare Act.

In *Gallo v. Mathews*, 538 F.2d 1148 (5th Cir. 1976), the Fifth Circuit came disturbingly close under the factual circumstances before it to interpreting § 405(h) of the Medicare Act so as to preclude all judicial review to a party. At the time of the decision, the Supreme Court had not yet closed the door on an alternative jurisdiction basis under the Administrative Procedure Act. In the *Gallo* matter, Dr. Gallo as a provider was seeking to have the federal district court compel the Secretary of Health, Education and Welfare to pay certain reimbursements that the Secretary had earlier disallowed.

*Gallo* was challenging reimbursement decisions made on services rendered in the years 1966 through 1971. Prior to 1973, the Medicare Act had not adopted § 405(g) of the Social Security Act, so that the Medicare Act precluded any judicial review of those reimbursement decisions complained of by plaintiff. After concluding that the Medicare Act afforded plaintiff no judicial review procedures, the Court also agreed that the *Salfi* court had interpreted § 405(h) so as to prevent Gallo from seeking judicial review of the administrative decisions under 28 U.S.C. § 1331. In discussing why *Salfi, supra,* was applicable in a situation where the plaintiff had no forum for review under § 405(g), the Court stated:

The determination in that case [*Salfi*] did not rest on the availability of judicial review through 405(g), but rather was based on the clear language of 405(h). That same language applies to the present case, and we find it controlling so as to preclude jurisdiction under 1331. (538 F.2d at 1150)

The Court did not have to consider the caveat raised in *Salfi, supra,* concerning preclusion of all constitutional challenges to statutory limitations though it did emphasize the gravity of that caveat. The Court stated:

As noted in *Salfi*, any interpretation of § 405(h) which precludes all constitutional challenges to statutory limitations would raise a serious constitutional question of the validity of the statute as so construed, 422 U.S. at 762, 95 S.Ct. 2457. *Gallo* points out that this consideration should lead us to the conclusion that *Salfi* does not apply. But this is an issue we need not reach, for we agree with *Gallo* that jurisdiction exists under the provisions of the Administrative Procedure Act. (538 F.2d at 1150)

It is clear that in reaching this decision, the Fifth Circuit concluded, adhering to *Salfi, supra,* and *Califano, supra,* that plaintiff provider had access to any administrative remedies available under the Act and that the provider was bringing his claim under the Act.

The Eighth Circuit in *St. Louis Univ. v. Blue Cross Hosp.*, 537 F.2d 283 (8th Cir. 1976) has carefully scrutinized those ambiguous areas left by *Salfi, supra*. St. Louis University as a representative of a provider brought an action pursuant to 28 U.S.C. § 1331 challenging the constitutionality under the due process clause of certain regulatory procedures used. Allegedly, the Secretary of Health, Education and Welfare used a provider appeals committee, a majority of · the members of which were officers or employees of the very agency whose initial decision was being appealed, and who had an institutional interest in the outcome.

Health, Education and Welfare took the position that judicial review of the due process claim was barred by § 405(h) and administrative review was precluded by an agreement between Health, Education and Welfare and Blue Cross which established the provider appeals committee. Health, Education and Welfare stated that it would not review the appeal committee's decision even when a provider asserted that the committee had blatantly ignored governing statutes, regulations, and constitutional requirements. The Eighth Circuit agreed with the district court's conclusion that St. Louis University could bring a due process claim challenging certain procedures of the Medicare Act under federal-question jurisdiction. In doing so, the Court provided an in-depth analysis of why the *Salfi* decision was not controlling in situations where a party has no other jurisdictional basis for bringing a due process claim than under 28 U.S.C. § 1331.

The Supreme Court has recognized that totally precluding judicial consideration of constitutional issues raises serious constitutional problems. *Weinberger v. Salfi, supra*, 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537; *Johnson v. Robinson,* 415 U.S. 361, 366 & n. 8, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389, 397 (1974). Those constitutional problems are greatly intensified when an agency purports to subdelegate its immunity from judicial review to a nongovernmental entity. It is a "cardinal principle" that we are to ascertain whether a construction of the statute involved is "fairly possible" by which such constitutional doubts may be avoided. *Johnson v. Robinson, supra,* 415 U.S. at 366–67, 94 S.Ct. at 1165–1166, 39 L.Ed.2d at 397–398. We are to proceed in what Justice Stewart termed "the candid service of avoiding a serious constitutional doubt." *United States v. Vuitch,* 402 U.S. 62, 97, 91 S.Ct. 1294, 1312, 28 L.Ed.2d 601, 624 (1971) (Stewart, J., dissenting in part).

Thus, we must now return to § 405(h) to determine if it precludes our jurisdiction to entertain a due process challenge to the procedures adopted by the Secretary to determine Medicare reimbursements. Section 405(h) forbids any action under § 1331 "to recover on any claim arising under this subchapter." Appellees in *Salfi* argued that this did not bar their constitutional claims since they "arose under" the Constitution and not under the Social Security Act. The Supreme Court recognized that this argument had substance. 422 U.S. at 760, 95 S.Ct. at 2464, 45 L.Ed.2d at 536. However, it rejected the argument because not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions. [Id. at 760–61, S.Ct. at 2464, 45 L.Ed.2d at 536.]

The Court also indicated that its decision was influenced by the availability of fully adequate judicial review under § 405(g). The Court said:

> In the present case * * * the Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. *Thus* the plain words of the third sentence of § 405(h) do not preclude constitutional challenges. [Id. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537 (emphasis added).]

In the present case, the due process claim has as its primary goal obtaining a constitutionally adequate hearing. Allowing such a hearing will not necessarily affect the University's entitlement to re-

imbursement or the amount allowed. Secondly, and more importantly, the Medicare Act does not provide the University an adequate alternative means of obtaining judicial review of its due process claim.

We believe that on these two grounds alone, this case is distinguishable from *Salfi,* and thus § 405(h) does not preclude our jurisdiction of count II. However, there is a third basis for distinction. Section 405(h) is incorporated into the Medicare Act only "as * * * applicable." § 1395ii. The general rule is that a statute incorporated into another "as applicable" will be read in such a manner as will give form and effect to the statute into which it is incorporated. *Penrose v. Whitacre,* 62 Nev. 239, 147 P.2d 887, 889 (1944), and authority cited therein. If § 405(h) were read to wholly preclude adjudication of the University's due process claim it would raise serious constitutional problems which might impair the force and effect of the Medicare Act. Therefore, we find that Congress did not intend for § 405(h) to apply to the Medicare Act in such a manner as to completely bar judicial consideration of a claim of denial of due process. (537 F.2d at 291, 292.)

In essence, the Court concluded that the constitutional claim did not arise under the Medicare Act as required in § 405(h) since the claim had as its primary goal obtaining a constitutionally adequate hearing rather than the determination of an entitlement to reimbursement. Second, the Court concluded that constitutional challenges against the Medicare Act must be reviewed in Federal Court pursuant to federal-question jurisdiction where the Medicare Act fails to provide an adequate judicial review remedy.

In *Dr. John T. MacDonald Foundation, Inc. v. Mathews,* 534 F.2d 633 (5th Cir. 1977), the Fifth Circuit in a matter similar factually to the *Gallo* case, *supra,* recognized that § 405(h) barred § 1331 jurisdiction over a challenge to a reimbursement decision by the administrative officials, even though such reimbursement decisions made prior to 1973 were not judicially reviewable under the Medicare Act. The Court did conclude, however, that plaintiff had an alternate jurisdictional avenue for obtaining judicial review under the Administrative Procedure Act.

After the Supreme Court in *Califano v. Sanders* precluded the use of the Administrative Procedure Act as an alternate means of obtaining jurisdiction, the Fifth Circuit granted a rehearing in *MacDonald Foundation,* 554 F.2d 714 (5th Cir. 1977). The Court sought to determine whether any available jurisdictional grounds existed through which the plaintiff could bring its claim to compel the Secretary to pay over disallowed reimbursements. As support for its conclusion that Congress did not intend § 405(h) to preclude federal-question jurisdiction over such claims as brought by plaintiff (where no judicial review was provided for in the Medicare Act), the Court adopted a substantial part of the reasoning set forth in *St. Louis University v. Blue Cross Hospital Service, supra.* Of crucial impact to this Court's inquiry was the fact that the Fifth Circuit explicitly agreed in toto with the *St. Louis University* court's reasoning as it applied to the type of constitutional claim brought in the *St. Louis University* matter. The Court stated:

And the Eighth Circuit, in *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283 (8 Cir. 1976), a post-*Salfi* Medicare case, refused to find complete preclusion of federal question jurisdiction by § 405(h), reasoning that constitutional claims must be reviewable despite § 405(h) language to the contrary. With respect, we think the reasoning of our Brothers' careful opinion supports a more expansive result than they reached: [citing *St. Louis University* reasoning verbatim.] (554 F.2d at 717)

The Fifth Circuit, in adopting parts of the reasoning in the *St. Louis University* decision held as follows:

We agree that *Salfi,* a Social Security Act case, is distinguishable from and does not rule Medicare appeals. We also

agree that § 405(h), incorporated into the Medicare context, should be there read in such a manner as to give rational form and effect to the workings of the Medicare scheme. We therefore hold that during the period before it provided adequate statutory review within the Medicare Act, and during that period only, Congress did not intend § 405(h) to preclude federal-question jurisdiction over such matters as this. (554 F.2d at 717–18)

As made clear in the decision, the Fifth Circuit found that the challenges raised by plaintiff arose under the Medicare Act. Yet after recognizing that the Medicare Act provided no procedure for judicial review of challenges to administrative disallowances of reimbursements, the Court found it necessary to conclude that federal-question jurisdiction was an acceptable jurisdictional basis under the circumstances.

Regardless of how each court has applied § 405(h) of the Medicare Act, they have all emphasized one caveat—the Medicare Act cannot be interpreted as closing the federal courts to the presentation of a constitutional challenge to the Act itself. Additionally, these courts have agreed that the constitutional challenge to the Act must be brought *under the Medicare Act* before § 405(g) and (h) can be applied to such a claim. *Salfi, supra.* Where the Court in *St. Louis Univ. v. Blue Cross Hosp. Serv., supra,* found (1) that a constitutional challenge against the Act was not brought under the Act and (2) that the Act itself did not provide a right for judicial redress of that claim, then even a provider under the Act would be allowed to pursue a claim under 28 U.S.C. § 1331 jurisdiction in spite of the implications raised in *Salfi, supra.*

The Fifth Circuit has recognized the rectitude of the decision in the *St. Louis University* case. In its latest decision involving the application of § 405(h) of the Medicare Act, the Fifth Circuit has held that even a provider under the Act who brings a claim for reimbursement under the Medicare Act can assert jurisdiction under 28 U.S.C. § 1331, where the Act fails to provide a procedure for judicial review.

The plaintiff in the present case is admittedly not regulated as a provider. The brunt of Unihealth's claim is, however, that it is being regulated by the Medicare Act while at the same time being denied due process rights regarding the manner in which it is being regulated. Specifically, Unihealth contends that it is being denied access to the administrative and judicial review procedures provided in the Act, while being regulated by a policy determination promulgated without legal notice and applied retroactively. All of these actions are purportedly in violation of Unihealth's due process rights.

The analysis in *St. Louis University v. Blue Cross Services, supra,* where that Court concluded that the *Salfi* decision did not prevent the provider from asserting 28 U.S.C. § 1331 jurisdiction, is directly applicable to Unihealth in the present matter. In the *St. Louis University* decision, the Court held: (1) that the due process challenge to certain regulations under the Medicare Act were not made under the Medicare Act; (2) that the Medicare Act provided for no judicial review of the party's claim; and (3) that reading § 405(h) to wholly preclude the adjudication of the party's due process claim would raise serious constitutional problems concerning the Medicare Act. These three factors are certainly relevant here.

Initially, Unihealth has brought a claim, similar to the one asserted by St. Louis University, seeking as its primary objective the redress of its due process rights rather than the obtainment of funds derived from Medicare. This fact alone supports the conclusion that Unihealth's claims are not brought under the Medicare Act. *St. Louis University, supra.* Such a conclusion is reinforced when the Court considers that the United States has made a persistent stand denying this nonprovider any access to the Medicare Act. The Court cannot reconcile the inconsistencies in the United States' position where it contends that Unihealth, though unable to avail itself of any of the administrative and judicial remedies provid-

ed under the Act, is still bringing its claims under that same Act.

Second, Unihealth not only has no judicial review procedure under the Act in which to bring its constitutional claims, but also has been denied any access to purely administrative remedies under the Act as well. This Court again fails to see any logic in the United States' position denying Unihealth access to any of the administrative and judicial review procedures under the Act, while at the same time arguing that one particular preclusion provision under the Act [§ 405(h)] is indeed applicable to Unihealth in barring jurisdiction under 28 U.S.C. § 1331.

Third, those same serious constitutional problems considered by the Court in the *St. Louis University* decision loom equally large in this matter should the Court read § 405(h) as to wholly preclude adjudication of due process claims against the Medicare Act.

■ Based on reasoning in no way inconsistent with the Supreme Court's pronouncements in *Salfi, supra,* and *Califano, supra,* this Court must now conclude that Unihealth Services Corporation has jurisdiction pursuant to 28 U.S.C. § 1331 to bring its constitutional claims.

Accordingly, on the basis of the foregoing reasons, this Court first concludes that Unihealth Services Corporation has standing under the Fifth Amendment to the United States Constitution to assert its constitutional challenges. A decision as to whether Unihealth has standing under the Medicare Act will be postponed until this Court makes a decision on the merits regarding the nature and extent that Unihealth has purportedly been regulated by the Act. Second, this Court also concludes that Unihealth has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 to have the constitutional challenges to the Medicare Act reviewed by this Court. The motion of the United States to dismiss the claim brought by Unihealth Services Corporation is hereby DENIED.