**LINCOLN PARK NURSING HOME, Lincoln Park Nursing and Convalescent Home, Inc., Plaintiffs,**

v.

**Joseph CALIFANO, Secretary of Health, Education and Welfare, Blue Cross Association and Hospital Service Plan of New Jersey, Defendants.**

**Civ. No. 74–1431.**

United States District Court, D. New Jersey.

April 22, 1977.

David A. Biederman, Kearny, N. J., for plaintiffs.

Judith S. Feigin, Civ. Div., U. S. Dept. of Justice, Washington, D.C., by Carolyn E. Arch, Asst. U. S. Atty., Newark, N. J., for defendants.

## MEMORANDUM OPINION

LACEY, District Judge.

Under the Health Insurance for the Aged Act [Medicare Act], 42 U.S.C. § 1395, *et seq.*, hospitals, nursing homes and similar-type facilities, known as providers of Medicare services to eligible patients, do not directly charge such patients for the services provided. 42 U.S.C. § 1395cc(a)(1). The Secretary of Health, Education and Welfare [Secretary], usually through designated fiscal intermediaries, reimburses the providers for the "reasonable cost" incurred by them in providing Medicare services. 42 U.S.C. §§ 1395f(b) and 1395h.

The Medicare Act, at 42 U.S.C. § 1395x(v)(1), authorized the Secretary to adopt, in his discretion, regulations for determining "reasonable cost," and, at § 1395x(v)(1)(A)(ii), directed the Secretary to adopt regulations establishing "suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." The Secretary, pursuant to that authority, has adopted and published regulations defining, determining and governing methods of "reasonable cost." 20 C.F.R. § 405.401–405.488 (1977).

Under 42 U.S.C. § 1395g, the Secretary is required to determine periodically, and during a provider's fiscal year, how much that provider should be paid before final audit by the General Accounting Office. Pursuant to that statutory provision and implementing regulation [20 C.F.R. § 405.405], the Secretary, at least monthly, reimburses a provider, subject to later adjustment for overpayments or underpayments, on "final settlement" at the end of the provider's "accounting period."

Prior to August 1, 1970 the Secretary, by regulation defining methods of determining "reasonable cost," recognized both straight-line depreciation, and one of two types of accelerated depreciation, of a provider's capital assets as a "reasonable cost" item. 20 C.F.R. § 405.415 (1967).[1]

Prior to February 5, 1970 the Secretary recognized that there was a defect in the depreciation regulation. Under it, excessive reimbursement payments were being made to providers who depreciated their capital assets under an accelerated method and either ceased participating in, or substantially reduced their participation in, the Medicare plan well before the expiration of the useful life of their capital assets. Thus,

1. Straight-line depreciation requires an even allocation of the cost of a capital asset, less its salvage value, over its useful life. Accelerated depreciation allocates more of the cost of a capital asset to the early years of the asset's useful life, rather than to an even amount annually.

### ILLUSTRATION

If a provider buys a bed for use by a Medicare patient in 1967 at a cost of $1,000 with an expected life of 10 years and a zero salvage value, he would claim depreciation, under the two methods, as follows:

| YEAR | STRAIGHT–LINE | DOUBLE DECLINING BALANCE |
|------|---------------|--------------------------|
| 1967 | $100.00 | $200.00 |
| 1968 | 100.00 | 160.00 |
| 1969 | 100.00 | 128.00 |

| YEAR | STRAIGHT–LINE | DOUBLE DECLINING BALANCE |
|------|---------------|--------------------------|
| 1970 | 100.00 | $102.40 |
| 1971 | 100.00 | 82.12 |

(etc. through 1976)

If the provider were to be fully reimbursed for this cost, and if, for example, after 1970 the bed was no longer used for a Medicare patient, use of the double declining balance method would mean that after 4 years the provider would have been paid a total of $597.60, rather than the actual depreciation of $400, reflected by the straight-line method, or approximately 150% of what the provider was justly entitled to. Only if the bed were used by the provider for a full 10 years would the different methods of depreciation reimbursement give substan-

on February 8, 1970, the Secretary announced a proposed regulation which would amend the existing depreciation regulation. 35 Fed.Reg. 2593, codified at 20 C.F.R. § 405.415(d)(3) (1977). Effective August 1, 1970, new providers were no longer allowed to claim accelerated depreciation. With respect to old providers using the accelerated method of depreciation who either terminate or substantially reduce their participation in Medicare before the expiration of the useful life of their capital assets, the Secretary could recapture from the provider all reimbursed costs to the extent they were attributable to accelerated depreciation costs in excess of what would have been allowed under the straight-line method.[2]

## THE PARTIES

Plaintiff, a New Jersey corporation, Lincoln Park Nursing Home, owns and operates (through plaintiff Lincoln Park Nursing and Convalescent Home, Inc.) a nursing home bearing the same name, Lincoln Park Nursing Home, 521 Pine Brook Road, Lincoln Park, New Jersey.

Defendant, Joseph Califano, as the Secretary of Health, Education and Welfare, is the cabinet-level officer of the United States bearing overall responsibility for the administration of the Social Security Act, 42 U.S.C. § 301 *et seq.*, which, pursuant to provisions of 42 U.S.C. § 1395, *et seq.*, includes the Medicare program.

Pursuant to agreements with the Secretary under 42 U.S.C. § 1395cc, the plaintiff participates as a provider of services in the Medicare program.

Pursuant to an agreement with the Secretary under 42 U.S.C. §§ 1395h and 1395u, Blue Cross Association acts as a fiscal intermediary and performs for the Secretary certain designated functions in the administration of Part A (42 U.S.C. §§ 1395c to 1395i–2, Hospital Insurance Benefits for Aged and Disabled) of the Medicare program.

Blue Cross Association subcontracted its duties as a fiscal intermediary to Hospital Service Plan of New Jersey.

Plaintiff nominated the Hospital Service Plan of New Jersey as their fiscal intermediary, and it is through the Hospital Service Plan of New Jersey that the Secretary makes payments to the plaintiff under the Medicare program.

The fiscal intermediary is responsible for determining the amount of program reimbursement to which a provider is entitled. 42 U.S.C. § 1395h. The amount of program reimbursement due to a provider prior to 1973 was based upon, and limited by statute to, the reasonable cost to the provider of furnishing services to Medicare beneficiaries, as determined under 42 U.S.C. § 1395x(v).[2a] 42 U.S.C. § 1395f(b).

---

tially the same result. To do otherwise would be to subject the Medicare plan and budget to costs of depreciation which were not shared by Medicare patients.

2. This Regulation provides in pertinent part: When a provider who has used an accelerated method of depreciation with respect to any of its assets terminates participation in the program, or where the health insurance proportion of its allowable costs decreases so that cumulatively substantially more depreciation was paid than would have been paid using the straight-line method of depreciation, the excess of reimbursable cost, determined by using accelerated depreciation methods and paid under the program over the reimbursable cost which would have been determined and paid under the program by using the straight-line method of depreciation, will be recovered . . . as an overpayment.

2a. 42 U.S.C. § 1395f(b) was amended, effective January 1, 1973, to provide that:

(b) The amount paid to any provider of services with respect to services for which payment may be made under this part shall, subject to the provisions of section 1395e of this title, be—

(1) the lesser of (A) the reasonable cost of such services, as determined under section 1395x(v) of this title, or (B) the customary charges with respect to such services; or

(2) if such services are furnished by a public provider of services free of charge or at nominal charges to the public, the amount determined on the basis of those items (specified in regulations prescribed by the Secretary) included in the determination of such reasonable cost which the Secretary finds will provide for compensation to such provider for such services.

As a provider of services in the Medicare program, plaintiff was required to file cost reports with the Hospital Service Plan of New Jersey so that its reasonable costs could be determined. 42 U.S.C. § 1395g; 20 C.F.R. § 405.406.

With respect to Lincoln Park Nursing and Convalescent Home, the cost reports involved in this litigation are those for the six months ending June 30, 1967, and for the fiscal years ending June 30, 1968 through June 20, 1971.

The Hospital Service Plan of New Jersey determined that in the period from 1967 to 1971 there had been a substantial decrease in Lincoln Park's Medicare utilization. This is reflected in the cost reports for the first and last periods in question.[3] For the six-month period ending June 30, 1967, out of a total of 27,482 patient days, roughly half or 13,328 were Medicare days. For the year ending June 30, 1971, the ratio of Medicare days to all patient days had substantially declined. Out of 55,115 patient days, only 3,756 days were Medicare days.[4]

Because of Lincoln Park's substantial decrease in Medicare utilization, the Hospital Service Plan of New Jersey was required, pursuant to the statutory limitation on Medicare payment to the "reasonable cost" of services rendered to Medicare beneficiaries, to recover the depreciation paid in prior years, under the accelerated method, in excess of that which would have been paid if the straight-line method had been used. The disallowance for each of the years in question was as follows:

| 1967 | – | $37,557.00 |
| 1968 | – | 67,129.00 |
| 1969 | – | 48,725.00 |
| 1970 | – | 32,790.00 |

Lincoln Park appealed this "recapture" of accelerated depreciation, and on May 15, 1974 a hearing on that and other issues was held before the Blue Cross Association Medicare Provider Appeal Committee. That Committee issued a decision upholding the application of the Recapture Regulation to Lincoln Park. Thereafter, Lincoln Park brought this action against the Secretary.

When this matter was called for trial, this court indicated that its reading of *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), coupled with the recently decided *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), led it to doubt its jurisdiction over the subject matter of this suit, consistent with a position earlier taken herein by the Secretary.[5] Counsel at their request were permitted to submit additional materials bearing upon the matter. Such have now been received and will be hereinafter analyzed.

Plaintiff assails not only the Recapture Regulation but also other action taken against it by the defendants. I will explicate the latter subsequently.

Lincoln Park contends that the Recapture Regulation is unconstitutional under the impairment of contracts clause (Article I, Section 10, Clause 1) and under the due process clause of the fifth amendment to the United States Constitution. Plaintiff argues that the Recapture Regulation appropriates, without due process, its alleged property right to the difference between the amount of the reimbursements paid to them on the accelerated method of depreciation and the amount of reimbursements that would have been paid out if plaintiff had used the straight-line method during the periods 1967–1971, inclusive. The Secretary, in response, maintains that the Recapture Regulation simply accomplishes what Congress intended under the statutory fabric with which we are concerned.

---

**3.** I regard as of no significance plaintiff's claim that this reduction came about through defendants' action.

**4.** These figures are not disputed.

**5.** In an earlier unpublished opinion this court had held it had subject matter jurisdiction, notwithstanding *Weinberger v. Salfi*, 422 U.S. 749,

95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), posited upon 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), makes it clear that the latter basis will not support subject matter jurisdiction.

## JURISDICTION

The starting point of this jurisdictional analysis is *Salfi* and how it is to be read with certain provisions of the Medicare Act.

The Medicare Act authorizes an individual beneficiary to obtain an administrative hearing, and judicial review of a final decision, regarding either his eligibility or amount of benefits. 42 U.S.C. § 1395ff(b) (1970), incorporating 42 U.S.C. §§ 405(b), (g) *as amended* (Supp. IV, 1974).

For the years here involved, however, a provider of services (such as plaintiff) could obtain review only of eligibility determinations. 42 U.S.C. § 1395ff(c) (1970). No provision was made for review of the level of payments allowed to a provider under the "reasonable cost" standard.[6]

Seemingly, this would set the stage for non-statutory review under one of the broad jurisdiction-conferring provisions of Title 28, United States Code. *See* Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals*, 88 Harv.L.Rev. 980, 981–85 (1975).

Since the claim is made of a fifth amendment deprivation, and the $10,000 jurisdictional amount is implicated, federal question jurisdiction under 28 U.S.C. § 1331 comes to mind as the source of this court's power to hear this case. However, a serious impediment is created to this approach by a provision of the Medicare Act, 42 U.S.C. § 1395ii, which incorporates by reference 42 U.S.C. § 405(h) of the Social Security Act. The latter section provides:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. <u>No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 [now § 1331] of Title 28 to recover on any claim</u> arising under this subchapter. (emphasis added)

The restriction upon suits against the United States, and officers or agencies thereof, embodied in the underlined third sentence of § 405(h), ordinarily do not foreclose judicial review where a party challenges HEW action under the Social Security Act, since a companion provision, § 405(g), authorizes a civil action to be commenced in the district court within 60 days of the mailing of HEW's notice of decision. However, while the Medicare Act expressly incorporates § 405(h), it does not incorporate § 405(g) as a basis for judicial review with respect to disputes over provider reimbursement. *See* 42 U.S.C. §§ 1395ii, 1395ff(c). Can it be said then that Congress has deprived federal courts of jurisdiction by the last sentence of § 405(h)?

Prior to *Salfi* the answer would have been in the negative. Given the well-settled doctrine that judicial review may be impliedly precluded only where a statute manifests such congressional intent by "clear and convincing evidence,"[7] courts had no difficulty in providing for non-statutory judicial review, where the Medicare Act itself provided no procedure for judicial review, and a substantial constitutional claim was asserted by a provider. *Kingsbrook Jewish Medical Center v. Richardson*, 486 F.2d 663, 666–67 (2d Cir. 1973).

Then came *Salfi*. There the plaintiffs, invoking jurisdiction under 28 U.S.C. § 1331 sued for insurance benefits allegedly due them under the Social Security Act, 42

---

6. The Social Security Act Amendments of 1972 changed this pattern so that payments to providers are now reviewable by a Provider Reimbursement Review Board, and ultimately by the district courts. 42 U.S.C. § 1395oo (Supp. IV, 1974), *as further amended* (U.S.C.A.Supp. Mar. 1976). This change was not effective for accounting periods ending before June 30, 1973, and thus is unavailable to plaintiff.

7. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), quoting from *Rusk v. Cort*, 369 U.S. 367, 380, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), and citing L. Jaffe, Judicial Control of Administrative Action 336–359 (1965).

U.S.C. §§ 403(d) and (g)(1), but which were withheld under certain provisions of that Act which plaintiffs claimed violated the fifth amendment. Despite the plaintiffs' assertion of the constitutional claim, which would ordinarily have provided a basis for general federal jurisdiction under § 1331, the Court construed the third sentence of § 405(h) as barring such jurisdiction.

Facially, one would have to conclude that the same result should obtain in a Medicare Act context, as here, and courts have so held. *Hazelwood Chronic and Convalescent Hospital, Inc. v. Weinberger*, 543 F.2d 703 (9th Cir. 1976), *vacated and remanded*, 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977)[7a]; *South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910 (2d Cir. 1976). *Hazelwood*, however, found subject matter jurisdiction under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, notwithstanding *Salfi*; and *South Windsor* found, in a case also involving the Recapture Regulation, that exclusive jurisdiction rested in the Court of Claims under 28 U.S.C. §§ 1346 and 1491, which latter section "is not included in 'section 41 of Title 28.'" 541 F.2d at 914 (thus rendering inapposite *Salfi*'s construction of the third sentence of § 405(h)).

The *Hazelwood* approach is no longer viable. *Califano v. Sanders, supra*, made that clear. *South Windsor*, where the Secretary had apparently urged the view the Court of Appeals adopted, has undergone no such destruction.[8]

While it is true, as both sides now argue, that a serious constitutional question would arise were Congress to close the federal courts entirely to constitutional challenges of federal statutes or actions, *see Salfi*, 422 U.S. at 762, 95 S.Ct. 2457, *South Windsor's* holding saves us this concern.

Accordingly, I must hold I lack subject matter jurisdiction over the Recapture Regulation claim and the complaint, to that extent, is dismissed, without prejudice to plaintiff's proceeding with its suit in the Court of Claims.

Turning to the other aspects of plaintiff's claim, it asserts it was injured by the defendants' rejection in part of sums it claimed for physiotherapy and owners' compensation. Plaintiff urges that under 20 C.F.R. § 405.451(c)(2) (1977) it was "entitled to be reimbursed for the actual cost (unless unreasonable) for the services of a qualified physical therapist"; that the price paid for his services was reasonable, reached after arm's length negotiations; and not out of line with prevailing rates for physical therapists in the area; and that the Secretary's establishment of "reasonable fees" for such extended care services do not comport with the going rate available to plaintiffs.[9] In sum, plaintiffs here are simply challenging the Secretary's "reasonable cost" determination. 20 C.F.R. § 405.451(c)(2).

Accordingly, this court lacks jurisdiction to review plaintiff's claim relating to the Secretary's "reasonable cost" determination with respect to their charges for physiotherapist fees. 42 U.S.C. § 405(h); *Salfi, supra*; and, since it is not a constitutional claim which is thus raised, there is no such concern about preclusion of judicial review as was raised in connection with the Recapture Regulation issue. Even if there were, however, the plaintiff has open to it the Court of Claims.

Plaintiff's claim regarding owners' compensation amounts to no more than a disagreement with the Secretary's findings and decisions. No constitutional claim is asserted. *See* Amended Complaint, Fourth and Fifth Counts.

---

**7a.** In *Hazelwood*, the Supreme Court granted a petition for certiorari, summarily vacated the judgment and remanded the case to the court of appeals for further consideration in light of *Califano v. Sanders, supra*.

**8.** From the defendants' most recent submissions, however, this court can only assume the Secretary's position has changed.

**9.** Amended Complaint, Second Count. *See also* Third Count, ¶ 3. Thus it is clear that the constitutional claim is not substantial as to the physiotherapy aspect of plaintiff's claim.

Thus, the essence of plaintiff's claim here is that "defendants allowed . . . compensation . . . amounts which are totally inadequate."

On such claim, it seeks no more than judicial review, that is, that "[t]he accounts allowed by defendants are so unreasonable and unsupported by facts as to require adjustment by this court." Additionally, it demands, as alternate relief, a remand "to the Secretary for a hearing on the amount of compensation to be awarded."

Accordingly, this court lacks jurisdiction to review the Secretary's findings and decision on the amount of owners' compensation reimbursable to plaintiffs, for the same reasons hereinabove set forth as to physiotherapy compensation.

## THE MERITS

Were I to have retained jurisdiction, I would have upheld the constitutionality of the Recapture Regulation, under the rationale of *Hazelwood* and *Springdale Convalescent Center v. Mathews*, 545 F.2d 943 (5th Cir. 1977).[10]

Insofar as the physiotherapy and owners' compensation claims are concerned, plaintiff is not entitled to a trial *de novo*, as it claims. Had I found subject matter jurisdiction as to these claims, I would have concluded that, on the record as a whole, there was substantial evidence to support the defendants' determination.

Essentially, both aspects of these two claims are founded upon a reading of the law and regulations which differ from the Secretary's. The defendants do not dispute that the plaintiff paid its physiotherapist what it claims. They simply take the position that this is not conclusive on "reasonable cost." I find that the defendants appropriately and properly applied the apposite regulations, including 20 C.F.R. § 405.-451(c)(2), and that they are supported by the record.

As to the owner's compensation, the defendants here as well had in the record the requisite substantiality of evidence to support their finding. The fact of other employment, the number of hours spent, availability, work capacity, all these were, from the record, considered, and I cannot conclude that there was insufficient support, as I have defined the standard, for the defendants' decision.

An order will be entered with the filing of this opinion.

---

10. *See also Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077 (1st Cir. 1977). It is noted that this case was decided prior to *Califano v. Sanders, supra*. It relies upon the Administrative Procedure Act for jurisdiction, which, of course, is inappropriate in light of *Sanders*.