NEW JERSEY SPEECH–LANGUAGE– HEARING ASSOCIATION, a New Jersey Corporation; New Jersey Association of Speech Pathologists and Audiologists in Private Practice, a New Jersey Corporation; Jules Kronengold, M.A., Irwin Blake, Ph.D., and Harriet Schwartz, M.A., on behalf of themselves as speech-language pathologists and all other entities and persons similarly situated, Plaintiffs,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation; United States Department of Health and Human Services; Richard Schweiker, Secretary of Health and Human Services; Health Care Financing Administration; and Carolyn K. Davis, Administrator, Health Care Financing Administration, Defendants.

Civ. A. No. 81–1663.

United States District Court, D. New Jersey.

Dec. 3, 1982.

Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer by H. Neil Broder, and Dean A. Kant, Roseland, N.J., for plaintiffs.

W. Hunt Dumont, U.S. Atty. by Judy Sello, Asst. U.S. Atty., Newark, N.J., for defendants.

STERN, District Judge.

The question presented here is whether a group of medical professionals who have contracted to furnish services to nursing homes receiving money under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare" Act), may challenge the method by which those nursing homes are reimbursed for the cost of providing services to Medicare beneficiaries. Since the Court finds that plaintiffs do not have standing to make this challenge, and since we find, alternatively, that the Court lacks federal question or mandamus jurisdiction to entertain the claim, this action will be dismissed.

## FACTS

*The Medicare Program as it Applies to this Action.*

The Medicare program is administered by defendant Health Care Financing Administration ("HCFA"),[1] a principal operating component of defendant United States De-

---

1. Defendant Carolyn K. Davis is sued in her capacity as Administrator of HCFA. References to HCFA should, hereinafter, be construed as references to defendant Davis as well.

partment of Health and Human Services ("HHS").[2] Part A of the Medicare program provides insurance coverage to the aged and disabled for the costs of hospital, related post-hospital and home health services. 42 U.S.C. § 1395c. This coverage is effected by directly reimbursing those providing services to beneficiaries of the program for the cost of furnishing such services. 42 U.S.C. § 1395f. To be eligible to participate in Part A of the Medicare program, an institution must be a "provider of services" —defined by statute as "a hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility or home health agency," 42 U.S.C. § 1395x(u)—which has entered into an agreement with HHS governing the amount the institution may charge beneficiaries, 42 U.S.C. § 1395cc, and which meets certain criteria regarding the extent and quality of care it provides. Skilled nursing facilities, commonly known as nursing homes, must provide a variety of services to their patients in order to participate in the program, including specialized rehabilitative services such as physical therapy, speech pathology and audiology and occupational therapy. 42 U.S.C. § 1395x(j); 42 C.F.R. § 405.1126. The skilled nursing facility may either provide a particular rehabilitative service directly through its own employees, or it may provide these services under "arrangement" with a third party; that is, it may contract with a supplier of a service for the provision of the service, pay the supplier pursuant to the contract, and then receive reimbursement from the Medicare program for its expenses under the contract. 42 U.S.C. § 1395x(w)(1); Complaint, ¶ 21(d). Where a provider chooses to provide services under "arrangement" with a supplier, it must retain professional and administrative responsibility for the services rendered. 42 C.F.R. § 405.1121(i).

Reimbursement of providers under the Medicare Program is most commonly handled by private insurance companies acting as fiscal intermediaries pursuant to a contract with HHS. 42 U.S.C. § 1395h. Providers are paid the lesser of the "reasonable cost" of the services furnished or the "customary charge" for the services, 42 U.S.C. § 1395f(b). Reasonable cost is defined as

> the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies and services; ...

42 U.S.C. § 1395x(v)(1)(A). Determination of the reasonable cost of providing health services is the responsibility of the fiscal intermediary. 42 U.S.C. § 1395h(a); 42 C.F.R. § 405.401(c).

Thus, where rehabilitative services are provided under arrangement, the services are actually furnished by therapists who are unable to receive compensation directly from the Medicare program, since such reimbursement may be received only by institutions which are qualified "providers". The therapists instead receive payment pursuant to contracts with providers and the providers in turn are reimbursed their reasonable costs under these contracts by intermediaries charged with the payment of Medicare funds.

The reasonable cost of physical, occupational and speech therapy services provided under arrangement with a skilled nursing facility may not exceed

> an amount equal to the salary which would reasonably have been paid for such services (together with any additional costs that would have been incurred by the provider or other organization) to the person performing them if they had been performed in an employment relationship with such provider or other organization (rather than under such arrangement) plus the cost of such other expenses (including a reasonable allowance for travel time and other reasonable types of expense related to any differences in ac-

---

**2.** Defendant Richard Schweiker is sued in his capacity as Secretary of HHS. References to HHS should, hereinafter, be construed as references to defendant Schweiker as well.

ceptable methods of organization for the provision of such therapy) incurred by such person, as the Secretary may in regulations determine to be appropriate. 42 U.S.C. § 1395x(v)(5)(A). The regulations which implement this provision state that HCFA "will establish criteria for use in determining the reasonable cost of physical, occupational, speech and other therapy services," 42 C.F.R. § 405.432(c)(1), and that the reasonable cost may not exceed the amount obtained by multiplying the hours worked by a therapist by "the adjusted hourly salary equivalency amount appropriate for the particular therapy in the geographical area in which the services are rendered" and adding a travel allowance. 42 C.F.R. § 405.432(c)(2).[3] The appropriate amounts for the "adjusted hourly salary equivalency amount" and for the travel allowance are to be set by guidelines developed by HCFA. 42 C.F.R. § 405.432(b)(6). Until these guidelines are available for a particular area and service, however, "costs will be evaluated so that such costs do not exceed what a prudent and cost-conscious buyer would pay for the given service." 42 C.F.R. § 405.432(c)(5). HHS's Health Insurance Manual, Chapter 15, also known as the Provider Reimbursement Manual, Part 1 ("PRM–1"), which gives instructions and guidance to intermediaries in their assessment of reasonable costs, states that an intermediary "may employ various means" to determine whether the amount paid by a provider for speech therapy services exceeds the amount which a prudent buyer would pay for the service. PRM–1, § 2103; Complaint, ¶ 62.

· HCFA has issued guidelines for physical therapy services, but has not yet issued guidelines for occupational therapy and speech therapy services. Complaint, ¶¶ 37–38. Intermediaries are therefore required to use the "prudent buyer principle" to determine the reasonableness of expenditures for speech therapy services provided under arrangement. If an intermediary determines that a provider has paid more for the service than a "prudent buyer" would, it must deny reimbursement for any excess. A provider who is dissatisfied with such a denial may request a hearing before the intermediary, if the amount disputed is over $1000, 42 C.F.R. § 405.1811, or before the Provider Reimbursement Review Board, if the disputed amount exceeds $10,000 and involves a cost report submitted after 1973. 42 U.S.C. § 1395oo(a). A provider may appeal any decision of the PRRB to the Secretary of HHS, and may seek judicial review of a final decision of the Secretary. *Id.* There is no specific provision pursuant to which those other than providers may challenge a denial of reimbursement to providers.

*The Nature of this Action.*

Plaintiffs New Jersey Speech-Language-Hearing Association and New Jersey Association of Speech Pathologists and Audiologists in Private Practice are professional organizations representing over 1000 speech-language pathologists and audiologists who practice in New Jersey. Plaintiffs Jules Kronengold, Irwin Blake, and Harriet Schwartz are speech-language pathologists practicing in New Jersey who assert claims both individually and as class representatives. The individual plaintiffs and those that plaintiffs represent furnish speech-language pathology services to Medicare beneficiaries under arrangement with a number of skilled nursing facilities in New Jersey. Plaintiffs allege that the contracts between plaintiffs and these skilled nursing facilities provide that the payment that a speech-language pathologist will receive from a facility for the provision of speech therapy services shall be equal to the maximum amount that the Medicare program will reimburse the facility for the provision of those services.[4] Defendant

---

**3.** The "adjusted hourly salary equivalency amount" is the prevailing hourly salary rate in a particular area plus a standard benefit and expense factor. Services provided on an intermittent or limited part-time basis are reimbursed on a "reasonable rate per unit of service" basis. 42 C.F.R. § 405.432(c)(3).

**4.** Plaintiffs' Mem. of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Mem.") at 36–37. The statement that plain-

Prudential Insurance Company of America ("Prudential"), is the fiscal intermediary which reimburses the facilities with which the plaintiffs have contracted to provide services.[5]

Plaintiffs allege that Prudential, in discharging its obligation to determine what a "prudent buyer" would pay for speech pathology services, has developed a formula for calculating the "adjusted hourly salary equivalency amount" for speech pathologists. Under this formula, Prudential takes the amount that it reimburses home health agencies for home health visits at which speech pathology services are provided (an amount set by HCFA regulations which is not challenged here), divides this amount by the comparable figure for visits at which physical therapy services are provided, and then multiplies the ratio obtained by the adjusted hourly salary equivalency amount for physical therapy services under the guidelines developed by HCFA. The resulting figure is then used by Prudential as the "adjusted hourly salary equivalency amount" for speech pathology services and forms an important component of Prudential's calculation of the reimbursement that it allows a provider for the provision of speech therapy services. For example, Prudential determined the reasonable costs for speech therapy services provided during Fiscal 1978 by dividing the amount that it would pay for a home health visit which provides speech pathology services—$44.95 —by the amount that it would pay for such a visit at which physical therapy services

were provided—$40.95—and multiplying the ratio obtained—1.098—by the physical therapy hourly salary equivalency guideline for the period—$12.20. Complaint, ¶¶ 43–45. Prudential allegedly repeated this process for annual periods between 1979 and 1981, obtaining hourly salary equivalency amounts of $15.00 for speech pathology services provided in 1979, $16.35 for services performed in 1980 and $18.30 for services performed in 1981. Complaint, ¶¶ 46–50.

In early 1980, Prudential informed the plaintiffs of its method for determining the reasonable cost of speech pathology services. Ex. C to the Complaint. Representatives of plaintiffs subsequently met with officials of HCFA and Prudential and voiced their objections to Prudential's method of calculating reasonable cost for speech pathology services. Complaint, ¶ 70.

Plaintiffs allege that no action was taken by either HCFA or Prudential in response to these objections.[6]

On May 29, 1981, plaintiffs filed this action contending that Prudential's method of reimbursing skilled nursing facilities for the costs of providing speech therapy services, and HCFA and HHS's toleration of this method, deprived them of rights secured by the Medicare Act and the Fifth Amendment to the United States Constitution. Plaintiffs contend, first, that the amounts that Prudential arrives at by using its formula are too low, and therefore violate the requirement of the Medicare Act that providers be paid reasonable costs. Complaint,

---

tiffs' payments from skilled nursing facilities are governed by the amount that those facilities receive from the defendants does not appear in the complaint, nor does it appear in any other document of record in this case.

5. 42 C.F.R. § 421.5 provides that an intermediary acts on behalf of HCFA in carrying out its administrative responsibilities under the Medicare program and that the Administrator of HCFA is the real party in interest in any litigation involving administration of the program.

6. In their complaint, plaintiffs quote from an HHS memorandum dated August 29, 1979, which discussed Prudential's methods in determining the reasonable cost of speech pathology services. In part, the quotation reads:

"[I]f we were to become aware that an intermediary was directly applying, for example, PT guidelines to other types of under arrangement services, we would advise the intermediary that this was improper. Generally, however, HCFA policy components do not routinely become involved in evaluating the methods used by intermediaries in determining reasonable costs. In the present situation, the intermediary was carrying out its responsibility to determine the reasonable cost of the services furnished, and had discussed its methodology with the appropriate individuals in the regional office."

Complaint ¶ 69. No citation to the memorandum is given, nor has a copy of the full memorandum been supplied to the Court.

¶ 63. Plaintiffs contend that these reimbursement levels constitute a taking of property without just compensation, and deny them their Constitutional right to practice their profession freely, Complaint, ¶¶ 64, 75. Second, plaintiffs argue that in selecting its method of determining reasonable cost, Prudential has in effect established the "guidelines" for determining the adjusted hourly salary equivalency amount for speech pathology services that the regulations, specifically 42 C.F.R. § 405.-432(b)(6), require be established by HCFA. Complaint, ¶¶ 51–53. Plaintiffs argue that HCFA has improperly delegated to Prudential its authority to establish guidelines, that Prudential has exceeded its authority in establishing its "guidelines", and that Prudential has improperly established its guidelines without publishing them in the Federal Register or giving interested parties a chance to comment on them. Complaint, ¶¶ 54–60, 68, 70–71, 78. Third, plaintiffs claim that HCFA and HHS have violated the Medicare Act by failing to terminate Prudential as a fiscal intermediary despite Prudential's failure to determine properly the reasonable cost of speech pathology services. Complaint, ¶¶ 72–75, 78–82. Finally, plaintiffs claim that HCFA and HHS's promulgation of guidelines for physical therapists but not speech pathologists violates their right to equal protection of the law. Complaint, ¶¶ 65, 75, 83; Plaintiffs' Mem. at 40–41.[7] Plaintiffs seek a declaration that Prudential's method for calculating the reasonable cost of speech therapy services is void, and an injunction against its further use; a declaration that only HHS and HCFA can issue guidelines pursuant to 42 C.F.R. § 405.432(b)(6); retroactive reimbursement from Prudential for the amount they have been underpaid as a result of the level of reimbursement set; and an order requiring HHS and HCFA to review Prudential's activities in determining the reasonable cost of speech

pathology services and to terminate Prudential as an intermediary.

Defendants now move to dismiss the complaint, asserting that plaintiffs lack standing to challenge the payments that skilled nursing facilities receive under the Medicare program and, alternatively, that 42 U.S.C. § 405(h) precludes the Court from asserting jurisdiction over this case. Since we agree with both of these contentions, the case will be dismissed.

## DISCUSSION

*Standing*

■ In order to establish standing, plaintiffs must demonstrate that they are proper parties to request adjudication of the issues at hand. *Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). This inquiry involves both constitutional and prudential limitations on the exercise of federal court jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To satisfy Article III's requirement that they present a "case or controversy" to the Court, plaintiffs must show that they have suffered a "distinct and palpable injury" which has a "fairly traceable causal connection" with conduct challenged in the suit and which is likely to be redressed if the relief sought in the suit is granted. *Watt v. Energy Action Educational Foundation,* 454 U.S. 151, 161, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981). In addition to satisfying these Article III minima, they must also show that there are no prudential principles which bar the assertion of their claim. Among these prudential considerations are the requirements that plaintiffs demonstrate that their interests are "arguably within the zone of interests to be protected or regulated by the statutory framework within which the claim arises" and that they assert their "own legal interests rather than those of third parties." *Gladstone, Realtors v. Vil-*

7. In their brief, plaintiffs assert that they are also challenging the constitutionality of the Medicare Act in that the Act fails to provide an administrative mechanism for them to challenge the manner in which skilled nursing facil-

ities are reimbursed by the defendants. Plaintiffs Mem. at 39–40. Neither this claim nor the facts underlying this claim appear in the complaint.

*lage of Bellwood,* 441 U.S. 91, 100 & n. 6, 99 S.Ct. 1601, 1608 & n. 6, 60 L.Ed.2d 66.

The conduct which plaintiffs challenge in this case is the manner in which skilled nursing facilities are reimbursed under the Medicare program and the amount of that reimbursement. However, the injury of which they complain—that they are receiving insufficient payment for the speech-language pathology services that they provide to nursing homes—is not the result of the defendants' policies and procedures. Plaintiffs receive no monies from the Medicare program; instead, they are paid for their services by skilled nursing facilities pursuant to contracts which they have freely negotiated with those facilities. Plaintiffs have pointed to nothing in the Medicare Act, in the applicable regulations, or in Prudential's policies which in any way affects their ability to negotiate and contract with a skilled nursing facility to receive adequate payment for their services, nor has the Court found any such provision. Thus, any inadequacy in the payment that plaintiffs receive from the skilled nursing facilities is a matter to be settled between plaintiffs and those facilities, not between plaintiffs and defendants.

The fact that the contract between plaintiffs and the nursing facilities may state that plaintiffs shall be paid an amount equivalent to the amount that the nursing facilities are reimbursed for the cost of providing speech-language pathology services does not change this result. A party which independently contracts with a recipient of governmental funds cannot acquire the right to challenge the method under which those funds are paid to the recipient by the government merely by entering into a contractual provision under which the amount it is paid by the recipient is governed by the amount that the government provides to that recipient.

Accordingly, we find that the injury which plaintiffs allege does not stem from any conduct of the defendants, but instead stems from contractual provisions that plaintiffs negotiated in the absence of any governmental involvement. Similarly, we find that the relief that plaintiffs seek will not necessarily redress the injury of which they complain, since the amount that they receive for their services is determined by contracts with third parties, not by any direct activity of the defendants. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Thus, plaintiffs have failed to satisfy the constitutional standing requirements that they show an injury which stems from the challenged conduct and which is likely to be redressed by the relief they seek.

■ We find in addition that plaintiffs have not satisfied the prudential limitation that they be within the zone of interests protected or regulated by the Medicare Act.[8] As plaintiffs point out, it is "well established that both welfare recipients and welfare providers (e.g. nursing homes) have standing to challenge alleged violations of the Social Security laws." *National Union of Hospital & Health Care Employees v. Carey,* 557 F.2d 278, 280 (2d Cir.1977); *Pacemaker Monitor Corp. v. United States Government,* 440 F.Supp. 473, 484–85 (S.D. Fla.1977). As plaintiffs also point out, however, "[p]laintiffs are neither providers nor beneficiaries under the Act. They are suppliers of speech-language pathology services." Plaintiffs' Mem. at 8. There are no general policies underlying federal health benefits programs which, absent specific provisions in the statutory and regulatory framework governing the conduct of such suppliers, provide standing to "providers of providers." *See National Union of Hospital & Health Employees v. Carey,* 557 F.2d at 281 (Medicaid Act, 42 U.S.C. §§ 1396 *et seq.,* and regulations do not confer standing on those supplying services to nursing homes). Thus, in *National Union* the Second Circuit held that a union which represented employees at facilities receiving

---

**8.** Given the Supreme Court's reaffirmation of the zone of interests test in *Gladstone, Realtors v. Village of Bellwood,* see *supra* at 1029, we decline to accept plaintiffs' suggestion that we dispense with this requirement. Plaintiffs' Mem. at 51 n. 22.

Medicaid funds could not challenge a regulation limiting the reimbursement received by those facilities, finding that the statutory and constitutional rights which plaintiffs sought to assert were solely those of the providers and that there was no indication that Medicaid providers were unable to assert their own interests. *Id.* at 281–82.[9] Similarly, in *Blue Cross Assn. v. Califano,* 473 F.Supp. 1047, 1065 (W.D.Mo.1979), *rev'd on other grounds sub nom Blue Cross Assn. v. Harris,* 622 F.2d 972 (8th Cir.1980), the court held that while an insurance company which had been nominated as an intermediary had standing to challenge the selection of another intermediary, organizations which had a purely contractual relationship with the insurance company were not within the zone of interests protected by the Medicare statute. We concur with these holdings, and find that a party is not within the zone of interests protected by the Medicare Act merely because it is the ultimate recipient of monies paid under that Act.[10]

The rationale of *Cotovsky-Kaplan Physical Therapy Associates v. United States,* 507 F.2d 1363 (7th Cir.1975), which is apparently the sole reported case which has found suppliers of a provider to be within the zone of interests regulated by the Medicare Act, fully supports this result. In *Cotovsky-Kaplan,* five proprietary physical therapy corporations challenged a Medicare regulation under which home health agencies could provide physical therapy services under arrangement with public or non-profit organizations, but could not do so under arrangement with proprietary corporations. The Seventh Circuit held that plaintiffs had standing to challenge this provision even though they were not directly regulated by the Medicare Act. The court stated that:

> [I]f, pursuant to what it perceives to be its statutory authority, a government agency regulates the contractual relationships between a regulated party and an unregulated party, the latter as well as the former may have interests that are arguably within the regulated zone for purposes of testing standing, and for this purpose a total prohibition is a form of regulation.

*Id.* at 1367. See also *Unihealth Services Corp. v. Califano,* 448 F.Supp. 1059, 1065 (E.D.La.1979) (whether or not plaintiff falls within the zone of interests protected by the Medicare Act "turns on a determination of the nature and extent of alleged regulating activities;" that is, the extent to which HHS's regulation of a provider affects the relationship between a provider and a third party.)

In the instant case, the provisions of the Medicare Act and regulations governing the provision of speech pathology services by skilled nursing facilities state that such services must be provided by personnel certified as clinically competent in speech pathology or with equivalent education, 42 C.F.R. § 405.1101(t), and that the speech pathologist must consult with the attending

---

**9.** In dissent, Judge Mansfield argued that the employees of a provider, and therefore the union representing those employees, had an interest in the program equivalent to that of the provider. *Id.* at 284. He was careful to note, however, that such a holding would not necessarily permit suits by suppliers of a provider, stating that "[s]uppliers and other independent contractors do not stand in the same close relationship to the providers as do employees who devote their entire working hours to personal rendition of the health services regulated by the Act." *Id.* at 286 n. 4.

**10.** In *New Jersey Chapter Inc. of the American Physical Therapy Assn. v. Prudential Life Ins. Co.,* 502 F.2d 500, 504 (D.C.Cir.1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1444, 43 L.Ed.2d 762 (1975), an association of physical therapists who, like plaintiffs here, had contracted to supply services to providers for the ultimate use of Medicare beneficiaries, challenged the method by which Prudential reimbursed those providers for the cost of physical therapy services. The District Court found that plaintiffs were not within the zone of interests to be protected by the Medicare Act, accepting the government's argument that suppliers of services who are "not subject to regulation under the Act and [whose] rights are derived from their contractual arrangements with providers" are not given a protectible interest by the Medicare Act and regulations. *Id.* The Court of Appeals noted that there was "much force in the government's arguments", but declined to reach the "close and difficult" standing question involved since the case was easily disposed of on the merits. *Id.*

physician and the nursing service in developing a written plan of care for the patient. 42 C.F.R. § 405.1126(b). As noted above, *supra* at 1027–1028, there is nothing in the Act or regulations that precludes a provider from contracting with any of the plaintiffs or that in any way controls the terms of such contracts. Under the rationale of *Cotovsky-Kaplan*, therefore, plaintiffs are not within the zone of interests protected by the program.[11]

Accordingly, we find that plaintiffs do not have standing to challenge the method by which defendants reimburse skilled nursing facilities for the provision of speech-language pathology services.

### Subject-matter Jurisdiction

Plaintiffs have alleged two bases of jurisdiction for this action: the general federal question jurisdiction provision, 28 U.S.C. § 1331, and the federal mandamus provision, 28 U.S.C. § 1361. We find that even if plaintiffs had standing to prosecute this action, these provisions would not afford the Court a jurisdictional basis to hear the claims they seek to assert here.

### Federal Question Jurisdiction

■ Section 205(h) of the Social Security Act, codified at 42 U.S.C. § 405(h), states that

> The findings and decisions of the Secretary [of HHS] after a hearing shall be binding upon all individuals who were parties to such hearing. No finding of fact or decision of the Secretary shall be reviewed by any person, tribunal or government agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover

on any claim arising under this subchapter.

By its terms, this provision applies only to Title II of the Social Security Act; however, under 42 U.S.C. § 1395ii, it has been incorporated into the Medicare Act to the same extent as it applies to Title II.[12]

In *Weinberger v. Salfi*, 422 U.S. 749, 756–57, 95 S.Ct. 2457, 2462–63, 45 L.Ed.2d 522 (1975), the Supreme Court held that § 405(h) "on its face . . . bars federal question jurisdiction" over suits seeking recovery of Social Security benefits. Rejecting an argument that the third sentence of § 405(h) was merely "a codified requirement of administrative exhaustion", the Court stated that the language of the provision "is sweeping and direct and . . . states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted." *Id.* at 757, 95 S.Ct. at 2463. The Court also noted that the presence of constitutional claims in a challenge to the denial of Social Security benefits did not change the analysis, since the Social Security Act provides "both the standing and the substantive basis" for such claims, *id.* at 760–61, 95 S.Ct. at 2464, and since the constitutional claims could be brought under the jurisdictional grants contained in the Act. *Id.* at 762, 95 S.Ct. at 2465.[13]

In *Salfi*, a mechanism for judicial review of the plaintiffs' claims was available under the Social Security Act, but plaintiffs chose not to use this mechanism. In cases, such as this one, in which the act provides plaintiffs with no route which culminates in judicial review, there is a division of authority as to the reach of § 405(h) as construed

---

**11.** Plaintiffs also contend that they are within the zone of interests protected by the Fifth Amendment to the United States Constitution. Since we find that plaintiffs' constitutional claims are not colorable, *infra* at n. 15, this contention must be rejected.

**12.** Plaintiffs contend that there is a "serious question" regarding the relevance of § 405(h) to litigation involving the Medicare Act. Plaintiffs' Mem. at 21 n. 10. The clear terms of 42 U.S.C. § 1395ii, as interpreted by every court

that has considered the issue, indicate that the provision is applicable.

**13.** Plaintiffs contend that there is a "serious question" as to whether *Salfi*'s discussion of § 405(h) is a holding or is merely dicta. Plaintiffs' Mem. at 21 n. 11. Whether or not the discussion is dicta, neither this Court nor any other court save the Supreme Court may properly ignore it.

by *Salfi.* A plurality of those Circuit Courts which have considered the issue have held that § 405(h) bars federal district courts from considering any claim challenging reimbursement decisions under Part A of the Medicare program. These circuits have held that jurisdiction is barred even though the suit involves constitutional or statutory challenges to Medicare reimbursement decisions, and even though the suit may involve a challenge to the procedures used in determining reimbursement levels rather than a substantive challenge to the level of reimbursement. *Northlake Community Hospital v. United States,* 654 F.2d 1234 (7th Cir.1981); *Memorial, Inc. v. Harris,* 655 F.2d 905 (9th Cir.1980); *Dr. John T. MacDonald Fund v. Califano,* 571 F.2d 328 (5th Cir.) (in banc), *cert. denied* 439 U.S. 873, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *South Windsor Convalescent Home v. Mathews,* 541 F.2d 910 (2d Cir.1976); *see also Lincoln Park Nursing Home v. Califano,* 456 F.Supp. 514 (D.N.J.1977); *cf. Hadley Memorial Hospital v. Schweiker,* 689 F.2d 905 (10th Cir.1982) (rejecting the distinction between substantive and procedural challenges). In the view of these courts, no constitutional difficulties in the preclusion of federal question jurisdiction are involved, since providers can raise constitutional and statutory claims in the United States Claims Court.[14] Two other circuits have rejected the conclusion that Medicare reimbursement challenges can be brought in the Claims Court if § 405(h) is read to bar jurisdiction under § 1331 for all claims. These circuits have indicated, without reaching the question, that they would permit district court review of colorable constitutional claims where there would otherwise be no method for judicial review. *Hopewell v. Schweiker,* 666 F.2d 34, 41 (4th Cir.1981); *Hospital San Jorge, Inc. v. Secre-*

*tary of HEW,* 598 F.2d 684, 686–87 (1st Cir.1979). The District of Columbia Circuit and the Eighth Circuit have held that jurisdiction may be maintained under § 1331 if the reimbursement challenge involves the procedures by which reimbursement levels are determined, rather than the amount of such reimbursement. *Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1080 (D.C.Cir.1978); *St. Louis Univ. v. Blue Cross Hospital Service,* 537 F.2d 283, 292 (8th Cir.), *cert. denied sub nom. Faith Hospital Association v. Blue Cross Hospital Service,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). Finally, the Sixth Circuit and the Court of Claims have held that federal question jurisdiction exists as to any claim for which the Medicare statute does not provide review, at least to the extent that constitutional or statutory claims are raised. *Chelsea Community Hospital v. Michigan Blue Cross Assn.,* 630 F.2d 1131, 1135–37 (6th Cir.1980); *Whitecliff, Inc. v. United States,* 536 F.2d 347, 350–51 (Ct.Cl.1976), *cert. denied* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). *See Herzog v. Secretary of HEW,* 682 F.2d 121, 126 (6th Cir. 1982) (*Chelsea* distinguishable because it involved the assertion of constitutional claims and because it involved Part A of the Medicare Act).

We adopt the position expressed by the Second, Fifth, Seventh and Ninth Circuits, and find that there is no federal question jurisdiction over a challenge to a reimbursement decision made under Part A of the Medicare Act. The "sweeping and direct" language of § 405(h), which states that "no action" shall be brought in federal district court to recover a claim under the Act, mandates this holding. *Weinberger v. Salfi,* 422 U.S. at 757, 95 S.Ct. at 2463.[15] We

---

**14.** Section 133 of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 39–40, effective October 1, 1982, transfers virtually all of the jurisdiction formerly exercised by the United States Court of Claims to the United States Claims Court.

**15.** A holding that jurisdiction may be maintained over constitutional claims would not change the outcome of this case, for we find

that plaintiffs' constitutional claims are not colorable. In determining the existence of subject matter jurisdiction, a district court must consider whether asserted constitutional claims are in fact colorable. *Northlake Community Hospital v. United States,* 654 F.2d at 1241; *Herzog v. Secretary of HEW,* 682 F.2d at 128 (Phillips, J. concurring in the result). *See, e.g. Fox v. Harris,* 488 F.Supp. 488 (D.D.C.1980); *United States v. Bellevue Hospital, Inc.,* 479

see no constitutional problems with such a holding, since the United States Claims Court may consider any basis for challenging a Part A reimbursement determination, and may award any requested monetary relief. *American Association of Councils of Medical Staffs v. Califano,* 575 F.2d 1367, 1373 (5th Cir.1978), *cert. denied* 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979).[16]

Plaintiffs contend that § 405(h) is inapplicable to this case for several reasons. First, they contend that § 405(h) applies only in situations where the Medicare Act provides procedures for review. Plaintiffs' Mem. at 22. As indicated above, no court has unqualifiedly taken such a narrow view of § 405(h), and we decline to do so as well. Such a reading of § 405(h) is plainly inconsistent with *Salfi's* holding that the section "is more than a codified requirement of administrative exhaustion." Second, plaintiffs argue that this suit does not involve a "claim arising under" the Medicare Act, because they seek declaratory and injunc-

tive relief rather than "benefits or other damages." Plaintiffs' Mem. at 15–16. Putting aside the fact that none of the circuit courts cited above has considered § 405(h) inapplicable to a request for declaratory and injunctive relief, it is clear that plaintiffs do in fact seek monetary relief. *See supra* at 1029. Third, plaintiffs contend that § 405(h) applies only to appeals from "decisions of the Secretary" while they challenge a failure to HHS and HCFA to act. Plaintiffs' Mem. at 14–15. This argument is clearly untenable in its failure to recognize that a decision not to act is nonetheless a decision, and unacceptable in its condonation, and possible encouragement, of the deliberate bypassing of administrative review procedures. Finally, plaintiffs urge that this action is not one against "the United States, the Secretary, or any officer or employee thereof" because it is brought against defendant Prudential. Plaintiffs' Mem. at 17–20.[17] The action, however, is also brought against HHS, the Secretary of

---

F.Supp. 780, 783–84 (D.Mass.1979). Plaintiffs claim that they have been denied the equal protection of the laws because HHS has promulgated guidelines for the reimbursement of physical therapists, but not for speech-language pathologists. In evaluating this challenged classification, we must use the "rational relation" standard of equal protection review. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Under this standard, it is permissible for the state to regulate one class of professionals but not another, since it is "not bound to deal alike with all these classes" and may "deal with the different professions according to the needs of the public in relation to each." *Semler v. Oregon State Bd. of Dental Examiners,* 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935). Indeed, one court has held that it is permissible for HHS to deny Medicare reimbursement completely to one class of health care professionals while granting it to others. *Bussey v. Harris,* 611 F.2d 1001, 1006 (5th Cir.1980). A fortiori, differences in the method of reimbursement withstand equal protection scrutiny.

Plaintiffs also contend that they have been deprived without due process of a protectible property interest in being reimbursed in accordance with the principles set out in the Medicare Act. It is clear as a matter of law, however, that plaintiffs have no such interest. *Cervoni v. Secretary of HEW,* 581 F.2d 1010, 1018 (1st Cir.1978). Therefore, we find plaintiffs' constitutional claims to be insubstantial. *See Erika, Inc. v. United States,* 634 F.2d 580,

591 (Ct.Cl.1980), *rev'd on other grounds,* 456 U.S. ——, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).

**16.** There is nothing inconsistent with a holding that the Claims Court has jurisdiction over this matter while this Court lacks such jurisdiction, since the third sentence of § 405(h) refers only to bases of federal district court jurisdiction. *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d at 914.

In *United States v. Erika, Inc.,* 456 U.S. ——, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Supreme Court held that the Court of Claims did not have jurisdiction to review a benefit determination under Part B of the Medicare Act. The Court did not address the availability of review of benefit determinations under Part A, and expressly declined to consider the scope of § 405(h). *Id.* at —— n. 6, 102 S.Ct. at 1653 n. 6. The Court of Claims has continued to assert jurisdiction over challenges to reimbursement decisions under Part A. *See,* e.g., *Whitecliff, Inc. v. United States,* No. 407–74 (Ct.Cl., order entered July 23, 1982).

**17.** This contention is inconsistent with plaintiffs' assertion of mandamus jurisdiction, since, under 28 U.S.C. § 1361, the Court may compel only "an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Plaintiffs seek mandamus relief against Prudential. Plaintiffs' Mem. at 46.

HHS, HCFA, and the Administrator of HCFA. The reimbursement plaintiffs seek in this action would, if granted, be paid from governmental funds, and the United States is the real party in interest in any action brought against a fiscal intermediary with respect to its duties under the Medicare program. *See supra* at note 5. Thus, this contention is without merit.

Accordingly, we find that § 405(h) is applicable to this action, and that it bars federal question jurisdiction over the claims plaintiffs seek to assert.

*Mandamus Jurisdiction*

■ Plaintiffs assert that the Court has jurisdiction under 28 U.S.C. § 1361 to issue a writ of mandamus to compel all of the defendants to reimburse them at a reasonable level for their services, and to compel HHS to review Prudential's performance as an intermediary and to terminate its contract. Whether § 405(h) bars the assertion of mandamus jurisdiction to the same extent that it bars assertion of jurisdiction under § 1331 is an open question in this circuit. *Mattern v. Mathews,* 582 F.2d 248, 253 (3d Cir.1978), *cert. denied* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). *Compare Ellis v. Blum,* 643 F.2d 68, 78 (2d Cir.1981) (following an "impressive array of cases" in holding that jurisdiction lies under § 1361 to review procedural claims under the Social Security Act) *with Hopewell Nursing Home, Inc. v. Schweiker,* 666 F.2d at 42, *and Association of American Medical Colleges v. Califano,* 569 F.2d 101, 112–14 (D.C.Cir.1977) (both finding that § 405(h) precludes mandamus jurisdiction over reimbursement decisions). We need not decide this particular jurisdictional question, however, since it is clear that mandamus is not a proper remedy in this case. Mandamus is appropriate only "where there has been an action taken by a governmental official contrary to law and so plainly prohibited as to be free from doubt . . . ." *Naporano Metal & Iron Co. v. Secretary of Labor,* 529 F.2d 537, 542 (3d Cir.1976). The determination of reasonable levels of reimbursement involves "a complex interplay between physician and hospital in ascertaining the appro-

priate medical charges for technical services." *St. Louis Univ. v. Blue Cross Hospital Service,* 537 F.2d at 289. The procedures for determining and reviewing Medicare reimbursement decisions reflect "a congressional intent to commit maximum discretion to the Secretary." *Id.* at 290. Similarly, HHS is empowered to terminate Prudential as an intermediary only if it finds that Prudential is substantially failing to perform its duties as an intermediary or that Prudential's retention as an intermediary is leading to inefficient administration of the Medicare program. 42 U.S.C. § 1395h(g)(2). Even in these situations, HHS is not required to terminate a provider's contract. *Id.* Finally, while HHS is required to develop criteria and procedures for evaluating a fiscal intermediary's performance—a duty which plaintiffs admit HHS has performed, *see* Plaintiffs' Mem. at 47—there is no provision requiring the review of any particular reimbursement decision or method of an intermediary. Thus, it is clear that defendants are not plainly violating a clear legal obligation owed to plaintiffs, and mandamus may not lie.

For the foregoing reasons, defendants' motion to dismiss is granted.